## POPE & Another *v.* ALLIS.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

Argued October 29, 1885.—Decided November 9, 1885.

Where the complaint alleged a contract for delivery of iron at one place, and the answer a contract for delivery at a different place, evidence offered by the plaintiff which tended to support the averment of the answer was properly admitted under § 2669 Rev. Stat. of Wisconsin, the defendants having failed at the trial to prove that they were misled by the variance between the complaint and the proof.

Averments made under oath, in a pleading in an action at law, are competent evidence in another suit against the party making them; and the fact that the averments are made on information and belief goes only to their weight and not to their admissibility as evidence.

Where goods of a specified quality, not in existence or ascertained, are sold, and the seller undertakes to ship them to a distant buyer, and, when they are made or ascertained, delivers them to a carrier for the buyer, the latter, on their arrival, has the right, if they are not of the quality required by the contract, to reject them and rescind the sale, and, if he has paid for them, to recover back the price in a suit against the seller.

Edward P. Allis, the defendant in error, was the plaintiff in the Circuit Court. He brought his suit to recover from the

defendants, Thomas J. Pope and James E. Pope, now the plaintiffs in error, the sum of $17,840, the price of five hundred tons of pig iron, which he alleged he had bought from them and paid for, but which he refused to accept because it was not of the quality which the defendants had agreed to furnish. The plaintiff also demanded $1750, freight on the iron, which he alleged he had paid.

The facts appearing upon the record were as follows: The plaintiff carried on the business of an iron founder in Milwaukee, Wisconsin, and the defendants were brokers in iron in the city of New York. In the month of January, 1880, by correspondence carried on by mail and telegraph, the defendants agreed to sell and deliver to the plaintiff five hundred tons of No. 1 extra American and three hundred tons No. 1 extra Glengarnock (Scotch) pig iron. The American iron was to be delivered on the cars at the furnace bank at Coplay, Pennsylvania, and the Scotch at the yard of the defendants in New York. By a subsequent correspondence between the plaintiff and the defendants it fairly appeared that the latter agreed to ship the iron for the plaintiff at Elizabethport, New Jersey. It was to be shipped as early in the spring as cheap freights could be had, consigned to the National Exchange Bank at Milwaukee, which, in behalf of the plaintiff, agreed to pay for the iron on receipt of the bills of lading. That quantity of American iron was landed at Milwaukee and delivered to the plaintiff about July 15. Before its arrival at Milwaukee the plaintiff had not only paid for the iron but also the freight from Coplay to Milwaukee. Soon after the arrival in Milwaukee the plaintiff examined the 500 tons American iron, to which solely the controversy in this case referred, and refused to accept it on the ground that it was not of the grade called for by the contract, and at once gave the defendants notice of the fact, and that he held the iron subject to their order, and brought this suit to recover the price of the iron and the freight thereon.

The defences relied on to defeat the action were (1) that the iron delivered by the defendants to the plaintiff was No. 1 extra American iron, and was of the kind and quality required by the contract; and (2) that the title having passed to the

plaintiff when the iron was shipped to him at Elizabethport, he could not afterwards rescind the contract and sue for the price of the iron and the freight which he had paid, but must sue for a breach of the warranty.

It was conceded upon the trial that, if the plaintiff was entitled to recover at all, his recovery should be for $22,315.40. The defendants pleaded a counterclaim for $5311, which was admitted by the plaintiff. The jury returned a verdict for the plaintiff for $16,513.11, for which sum and costs the court rendered a judgment against the defendants. This w. it of error brought that judgment under review.

*Mr. George P. Miller* for plaintiffs in error [*Mr. William P. Lynde* also filed a brief for same].—Four hundred and forty tons of the iron in controversy were delivered to the defendant in error at the furnace bank, and sixty tons at Elizabethport. The contract was for the delivery of No. 1 Ex. American Iron. When it was entered into in January, 1880, it was executory. It became executed when the plaintiffs in error appropriated particular iron to fulfil it. *Browne v. Hare*, 4 H. & N. 822; *Campbell v. Mersey Docks*, 14 C. B. N. S. 412; *Dixon v. Yates*, 5 B. & Ad. 313, 340. And the arrangement which was made for the shipment of the iron and the sending of the bills of lading to the National Exchange Bank of Milwaukee was entirely independent of the sale, and the defendants were acting in that matter under the direction and as the agents of the plaintiff, as the sale was completed on the delivery of the iron at the place designated in the contract. *Hatch v. Oil Co.*, 100 U. S. 124, 137.

We asked the court to instruct the jury " to return a verdict for the defendants," (1) Upon the ground that there was no evidence in the case sustaining the contract as it was set forth in the complaint, that the iron was to be delivered in Milwaukee. (2) That there was no evidence that the iron received by plaintiff from lake vessels was the same iron delivered to plaintiff at the furnace bank free on board the cars, or the same that was shipped on the canal boats at Elizabethport, New Jersey. (3) There was no legal evidence upon which a

verdict for plaintiff could be sustained. We were entitled to that instruction. See *Lieb* v. *Henderson*, 91 Ill. 282. This court has said in *Manning* v. *Insurance Co.*, 100 U. S. 693, 697, " It is error to submit to a jury to find a fact of which there is no competent evidence." " We do not question that a jury may be allowed to presume the existence of a fact in some cases from the existence of other facts which have been proved. But the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. If it has not, it is regarded as too remote. The only presumptions of fact which the law recognizes are immediate inferences from facts proved. Remarking upon this subject, in *United States* v. *Ross*, 92 U. S. 281, 284, we said, ' Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves be presumed.' Referring to the rule laid down in Starkie on Evidence, page 80, we added: ' It is upon this principle that courts are daily called upon to exclude evidence as too remote for the consideration of the jury. The law requires an open and visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on · Ev. 95. A presumption which a jury may make is not a circumstance in proof, and is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. *Douglass* v. *Mitchell*, 35 Penn. St. 440.' "

The iron in controversy was sold with warranty of quality. It was to be No. 1 Extra American iron. Words of that description in a sale of personal property constitute a warranty that the property is of the quality described. *Hogins* v. *Plympton*, 11 Pick. 97; *Henshaw* v. *Robins*, 9 Met. 83; *Lyon* v. *Bertram*, 20 How. 149, 153. On a breach of warranty of quality, the purchaser of personal property cannot, in the absence of fraud, rescind the contract of purchase and sale, and sue to recover the purchase price. There is a conflict of authority in the American courts on this point. See Benjamin on

Sales, 4th Am. Ed. (1883), §§ 624–34. But the question has been decided by this court, and it is unnecessary to discuss it. *Thornton* v. *Wynn*, 12 Wheat. 183 ; *Lyon* v. *Bertram*, cited above. In any aspect of the case, the attempted rescission of the contract was not made within a reasonable time. Such rescission should be made, if at all, within a time when the seller could be put *in statu quo*. See authorities last cited.

*Mr. Eppa Hunton* [*Mr. J. G. Jenkins* also filed a brief] for defendant in error.

Mr. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the language above reported, and continued:

1. The first assignment of error relates to nine exceptions to the admission of evidence by the court against the objection of the plaintiffs in error. The complaint having alleged that the contract between the parties was for the delivery of the iron at Milwaukee, the plaintiffs in error objected to the introduction of evidence offered by the defendant in error which tended to show a contract for the delivery of the iron at Coplay or Elizabethport, because the proof offered did not support the averments of the complaint, and the court having overruled their objections and admitted the evidence, they now contend that the judgment should for that reason be reversed.

But it is clear that, under § 2669 Rev. Stat. of Wisconsin, which constitutes a rule for the guidance of the Federal courts in that State, this assignment of error is not well taken. The section mentioned provides: "No variance between the allegations in pleading and the proof shall be deemed material unless it shall *actually mislead* the adverse party to his prejudice in maintaining his action or defence on its merits; whenever it shall be alleged that a party has been so misled, the fact shall be proved to the satisfaction of the court in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just."

The answer of the plaintiffs in error denied that the contract provided for the delivery of the iron in Milwaukee, and averred

that the iron was to be delivered at Coplay. We do not think that evidence offered by the defendant in error, which tended to establish the averments of the answer rather than of the complaint, was such a variance as could mislead the plaintiffs in error to their prejudice in maintaining their defence upon the merits. But, if they had been really misled, they should have proved the fact to the satisfaction of the court upon the trial. Having neglected to do this, they cannot now complain. It is clear that, under the statute of Wisconsin, the plaintiffs in error had no just ground of exception to the admission of the evidence objected to. *Bonner* v. *Home Insurance Co.*, 13 Wisc. 677 [Vilas & Bryant's Ed. 758] ; *Leopold* v. *Van Kirk*, 30 Wisc. 548, 553 ; *Giffert* v. *West*, 33 Wisc. 617. These cases show that the discrepancy between the pleading and the proof was a variance within the meaning of the statute of Wisconsin, and that the section cited is applicable to the question in hand.

2. The next contention of the plaintiffs in error is, that evidence was improperly admitted by the Circuit Court to show that the iron landed at Milwaukee was not of the quality required by the contract, the defendant in error not having shown or offered to show, as the plaintiffs in error insisted, that it was the same iron which the defendant in error had purchased, and which had been shipped at Elizabethport. And on the ground that the identity of the iron was not shown, the plaintiffs in error insist that the court erred in refusing to charge the jury, as requested by them, to return a verdict in their favor.

We think the assignment of error is not supported by the record. The defendant in error did introduce evidence, and, as it seems to us, persuasive evidence, to show that the iron shipped for the defendant in error at Elizabethport was the iron landed and delivered to him at Milwaukee.

The testimony introduced tended to prove that one Hazard, on whose dock, at Elizabethport, New Jersey, iron belonging to the plaintiffs in error was stacked, shipped between April 28 and May 12, at Elizabethport, on five canal boats, whose names are given, five hundred tons of American iron, consigned to Thomas J. Pope & Brother, care National Exchange Bank,

Milwaukee, Wisconsin, and to be transported to Milwaukee by the river, canal, and lakes; that about the same time there was shipped to the same consignees, and to the care of the same bank, the three hundred tons of Scotch iron, which had been sold by the plaintiffs in error to the defendant in error.

It was further shown that, on June 9 and 15 following, eight hundred tons of iron, five hundred being American and three hundred Scotch, were transferred from the dock at Buffalo to two schooners, and the bills of lading given by the schooners stated that the five hundred tons of American iron were the cargo of canal boats of the same name as those on which the iron had been shipped at Elizabethport, and it appeared that both the American and Scotch iron transferred to the schooners was consigned to Thomas J. Pope & Brother, care National Exchange Bank, Milwaukee, Wisconsin. It was further shown that, about July 15, the two schooners, above mentioned, landed at Milwaukee five hundred tons American iron and three hundred tons of Scotch iron for the consignees mentioned in the bills of lading, and the iron was delivered to the defendant in error, and it was conceded that the three hundred tons of Scotch iron were the same which had been sold by the plaintiffs in error to the defendant in error and shipped to said consignees for him.

In addition to this evidence, the defendant in error introduced the deposition of James E. Pope, one of the plaintiffs in error, in which he testified as follows: "There is a suit pending between my firm, as plaintiff, and the Coplay Iron Company, as defendant, relating to the American iron shipped to E. P. Allis & Co." As an exhibit to this deposition there was a copy of the complaint in the suit, sworn to by James E. Pope, from which it appeared that the action was brought to recover of the Coplay Iron Company damages for the breach of a contract by which that company warranted that a certain five hundred tons of iron, sold by it to the plaintiff in said suit, as No. 1 extra iron, was of that quality, and it clearly appeared from the complaint referred to, that one of the facts on which the cause of action was based was, that the five hundred tons of iron sold and shipped by the plaintiffs in error to the care of

the National Exchange Bank, for the defendant in error, as No. 1 extra American iron, was the identical iron delivered for him to the bank at Milwaukee, and which he had purchased and paid for.

We, therefore, repeat, that there was persuasive evidence offered to show that the iron shipped at Elizabethport, for the defendant in error at Milwaukee, was the identical iron landed at Milwaukee and received by him. . The assignments of error, based on the contention that there was no such evidence, must, therefore, fall.

3. The bill of exceptions shows that the complaint above mentioned in the suit of the plaintiffs in error against the Coplay Iron Company was sworn to by James E. Pope, that it contained an averment on information and belief touching the quality of the iron in controversy in this suit, and that the plaintiffs in error asked the court on the trial of this case to charge the jury that such complaint was not evidence of any facts therein stated on information and belief. The court refused the charge, but instructed the jury that, in determining what weight as an admission the complaint should have, they might consider the fact that the allegation in relation to the quality of the iron in question was made on information and belief.

The plaintiffs in error having excepted at the trial, now assign as error the refusal of the court to give the charge requested. We think the court did not err in its refusal.

When a bill or answer in equity or a pleading in an action at law is sworn to by the party, it is competent evidence against him in another suit as a solemn admission by him of the truth of the facts stated. *Studdy* v. *Sanders*, 2 D. & R. 347 ; *De Whelpdale* v. *Milburn*, 5 Price, 485 ; *Central Bridge* v. *Lowell*, 15 Gray, 106 ; *Bliss* v.*Nichols*, 12 Allen, 443 ; *Elliott* v.*Hayden*, 104 Mass. 180 ; *Cook* v. *Barr*, 44 N. Y. 156 ; Taylor on Evidence, § 1753, 7th Ed. ; Greenleaf Evidence, §§ 552, 555.

When the averment is made on information and belief, it is nevertheless admissible as evidence, though not conclusive. Lord Ellenborough, in *Doe* v. *Steel*, 3 Camp. 115. The authority cited sustains the proposition that the fact that the aver-

ment is made on information and belief merely detracts from the weight of the testimony; it does not render it inadmissible. The charge given by the Circuit Court on this point, therefore, deprived the plaintiffs in error of no advantage to which they were entitled.

4. The assignment of error mainly relied on by the plaintiffs in error is that the court refused to instruct the jury to return a verdict for the defendants. The legal proposition upon which their counsel based this request was, that the purchaser of personal property, upon breach of warranty of quality, cannot, in the absence of fraud, rescind the contract of purchase and sale and sue for the recovery of the price. And they contended that, as the iron was delivered to defendant in error either at Coplay or Elizabethport, and the sale was completed thereby, the only remedy of the defendant in error was by a suit upon the warranty.

It did not appear that at the date of the contract the iron had been manufactured, and it was shown by the record that no particular iron was segregated and appropriated to the contract by the plaintiffs in error until a short time before its shipment, in the latter part of April and the early part of May. The defendant in error had no opportunity to inspect it until it arrived in Milwaukee, and consequently never accepted the particular iron appropriated to fill the contract. It was established by the verdict of the jury that the iron shipped was not of the quality required by the contract. Under these circumstances the contention of the plaintiffs in error is, that the defendant in error, although the iron shipped to him was not what he bought, and could not be used in his business, was bound to keep it, and could only recover the difference in value between the iron for which he contracted and the iron which was delivered to him.

We do not think that such is the law. When the subject-matter of a sale is not in existence, or not ascertained at the time of the contract, an undertaking that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract;

because the existence of those qualities being part of the description of the thing sold becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted. *Chanter* v. *Hopkins*, 4 M. & W. 399, 404 ; *Barr* v. *Gibson*, 3 M. & W. 390 ; *Gompertz* v. *Bartlett*, 2 El. & Bl. 849 ; *Okell* v. *Smith*, 1 Stark N. P. 86 ; Notes to *Cutter* v. *Powell*, 2 Smith's Leading Cases, 37, 7th Am. Ed. ; *Woodle* v. *Whitney*, 23 Wisc. 55 ; *Boothby* v. *Scales*, 27 Wisc. 626 ; *Fairfield* v. *Madison Man. Co.*, 38 Wisc. 346. See also *Nichol* v. *Godts*, 10 Exch. 191.

So, in a recent case decided by this court, it was said by MR. JUSTICE GRAY : "A statement " in a mercantile contract " descriptive of the subject-matter or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty in the sense in which that term is used in insurance and maritime law, that is to say, a condition precedent upon the failure or non-performance of which the party aggrieved may repudiate the whole contract." *Norrington* v. *Wright, ante,* 188. See also *Filley* v. *Pope, ante,* 213.

And so, when a contract for the sale of goods is made by sample, it amounts to an undertaking on the part of the seller with the buyer that all the goods are similar, both in nature and quality, to those exhibited, and if they do not correspond the buyer may refuse to receive them, or if received, he may return them in a reasonable time allowed for examination, and thus rescind the contract. *Lorymer* v. *Smith,* 1 B. & C. 1 ; *Magee* v. *Billingsley,* 3 Ala. 679.

The authorities cited sustain this proposition, that when a vendor sells goods of a specified quality, but not in existence or ascertained, and undertakes to ship them to a distant buyer when made or ascertained, and delivers them to the carrier for the purchaser, the latter is not bound to accept them without examination. The mere delivery of the goods by the vendor to the carrier does not necessarily bind the vendee to accept them. On their arrival he has the right to inspect them to ascertain whether they conform to the contract, and the right to inspect implies the right to reject them if they are not of

the quality required by the contract. The rulings of the Circuit Court were in accordance with these views.

We have been referred by the plaintiffs in error to the cases of *Thornton* v. *Wynn*, 12 Wheat. 183, and *Lyon* v. *Bertram*, 20 How. 149, to sustain the proposition that the defendant in error in this case could not rescind the contract and sue to recover back the price of the iron. But the cases are not in point. In the first there was an absolute sale with warranty and delivery to the vendee of a specific chattel, namely, a race horse ; in the second, the sale was of a specified and designated lot of flour which the vendee had accepted, and part of which he had used, with ample means to ascertain whether or not it conformed to the contract.

The cases we have cited are conclusive against the contention of the plaintiffs in error. The jury has found that the iron was not of the quality which the contract required, and, on that ground, the defendant in error, at the first opportunity, rejected it, as he had a right to do. His suit to recover the price was, therefore, well brought.

Other errors are assigned, but, in our opinion, they present no ground for the reversal of the judgment, and do not require discussion.

*Judgment affirmed.*