88 231
111 640

THE AMERICAN WHITE BRONZE COMPANY v. JOEL H.
GILLETTE, ADMINISTRATOR, AND PHOEBE GITCHEL,
ADMINISTRATRIX, OF THE ESTATE OF
HENRY GITCHEL, DECEASED.

*Contract—Failure to perform—Rescission.*

Where an order is given for a monument with certain inscriptions,
among which is the name, date of death, and age of the
deceased, and the manufacturer omits from the inscription the
age, the orderer has the right to reject the monument, and, in
the absence of an agreement that the manufacturer may
remedy defects or furnish a new monument, he can do neither,
the contract being ended by notice of such rejection.

Error to Berrien. (O'Hara, J.) Argued October 13,
1891. Decided October 30, 1891.

*Assumpsit.* Plaintiff brings error. Affirmed. The
facts are stated in the opinion.

*J. J. Van Riper* and *Edward Bacon,* for appellant.

*Theo. G. Beaver* (*George S. Clapp,* of counsel), for
defendants.

MORSE, J. March 28, 1888, Henry Gitchel, deceased,
gave to the plaintiff's agent, Charles C. Sherrill, of Niles,
Mich., an order for a monument, with certain inscrip-
tions thereon, among which was the following:

Lower tablet—" Rosanna Gitchel, wife of James Miller.
Died July 30, 1876. Age 30 yrs. 11 months."

The order provided that the shipment was to be made
to Mr. C. C. Sherrill, Niles,—

"As soon as convenient after June 1, 1888. Payment
to be made in cash after work is set in the cemetery.

* * * This monument is fully warranted in every respect to be just as represented in our circulars."

The contract price was $800. The monument was shipped June 30, 1888. It arrived at Niles July 14, 1888, and was erected upon Henry Gitchel's lot in the cemetery at that place. The inscription above noted was not perfect, the age being left out, so that it read:

"Rosanna Gitchel, wife of James Miller. Died July 30, 1876."

This defect was discovered by Sherrill, the agent of plaintiff, who notified the company thereof sometime prior to August 8, 1888. Mr. Henry Gitchel died before the trial of the suit in the court below, and we are therefore deprived of his evidence, but the following notice, served by him upon the plaintiff, shows that at its date plaintiff had made some proposal to him in regard to remedying this omission:

"To AMERICAN WHITE BRONZE CO.,
                "Chicago, Ill.:
"You having failed to comply with my order, dated March 28, 1888, for a white bronze monument, you are notified that I hereby rescind and revoke said order, and I decline to accept the proposition made by you in relation to the same under date of August 8, 1888.
                "Yours, &c.,
                     "HENRY GITCHEL.
"Dated, Niles, Aug. 8, 1888."

The plaintiff offered no testimony to show what this proposal was. It is contended by the plaintiff that this notice was not sufficient, in that it did not point out the defects of which Gitchel complained, or in what respect the monument did not conform to the order. But it is evident that this omission in the inscription was known to both plaintiff and Gitchel, and the notice was therefore sufficient as regards this defect. On receiving the notice, plaintiff consulted an attorney as to its rights in

the premises, and after such consultation concluded to furnish Gitchel with an entirely new monument. This new monument was shipped to Niles, arriving in the cemetery December 11, 1888. It was found that the base was broken, and it was thereupon shipped to the plaintiff at Chicago, by its agent, and another or third monument forwarded, which was put up on Gitchel's lot, without his knowledge or consent, January 14, 1889. The plaintiff claims that this last monument conforms in every respect to the order, and is complete and perfect. The defendants deny this, and claim defects in it. In my view of the case, this contention is immaterial. There is no proof tending to show that Henry Gitchel ever agreed to take a new monument in the place of the first one erected on his lot; but when monument No. 2 was brought to the cemetery it is shown that he notified Sherrill, plaintiff's agent, not to trespass upon his lot, and gave a written notice to the sexton, Mr. Lafler, which Lafler read to Sherrill on the day of its date. The notice was as follows:

"NILES, December 13, 1888.

"MR. C. H. LAFLER:

"I hereby order you to forbid Mr. Sherrill, or any member or agent of the American Bronze Company, to put up any monument on the lot of David Gitchel estate, in Silver Brook Cemetery, as I shall consider it a trespass if they do.

"HENRY GITCHEL."

The material composing the first monument, except the urn, which could not be found, was taken by the plaintiff and shipped to Chicago. This suit is not brought to recover the contract price for the first monument on the ground that it complied with the agreement. It cannot be claimed that it was accepted, nor is the action brought

for the value of the monument as first set up. It must be held that the plaintiff conceded, when it undertook to furnish a new monument, and took away the old one, that it did not meet the requirements of the order. The plaintiff's declaration counts upon the contract, and alleges a fulfillment of it in making and putting up the monument of January, 1889, with no hint or intimation of the matters shown in the proof relating to the first and second monuments. The case was submitted to the jury, who decided in favor of the defendants.

Various errors are assigned to the rulings and charge of the court, but none of them are material. As the case stood, the circuit judge would have been amply justified in directing a verdict for the defendants. The defect in this inscription was an important one. The age being left out, there was no date remaining but the day and year of the death. As the age was made a particular part of each inscription of death, and there were seven of them, the omission of it in this instance cannot be considered as an immaterial defect. Henry Gitchel was not obliged to accept it as it was. It was undertaken to be shown that what is known as a "working order" was exhibited to him before the first monument was completed, and that it came back to the plaintiff, marked "O. K." This testimony was, however, immaterial. By its own action the plaintiff waived its right, if it had any, on this account to force an acceptance of the monument as it was upon Gitchel, and sought to remedy it by building a new one, after Gitchel had repudiated the one furnished, and without his consent, and against his express orders.

Had the plaintiff, the defect as above stated being admitted in the monument first sent, a right to build a new one, and put it up under the agreement in the

order, without the consent and against the protests of Henry Gitchel? This is the only question in the case. In the order or agreement in this case there was no provision that the plaintiff should be notified of any defect in the monument, and allowed a reasonable or fixed time thereafter in which to remedy such defects. The performance of the contract preceded payment. There was a substantial failure to perform the contract, and, unless the plaintiff had the right to keep on experimenting until a perfect monument was erected, the plaintiff could recover nothing, although Gitchel did not remove the monument first furnished at once from off his lot. Permitting it to stand there would not be an acceptance; and, as the company finally removed it, and did not insist upon an acceptance of it as it was first erected, the fact that Gitchel did not remove it until late in the fall can have no bearing on the issue here.

I can find nothing in the order or in law giving the plaintiff in this case a right to furnish Gitchel the new or third monument, for which this suit is brought. The order provided that the monument should be shipped to Niles, as soon after June 1, 1888, as convenient to the plaintiff. The plaintiff fixed such convenient time by shipping it June 30, 1888. It was not in compliance with the order. There is nothing in the agreement to meet such a case. It is therefore a naked case of a delivery within the time agreed upon of a monument not of the description ordered. In such case the law steps in, and says that the purchaser is not obliged to accept it.

"When the subject-matter of a sale is not in existence at the time of the contract, an undertaking that it shall, when existing, * * * possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract." *Pope v. Allis,* 115 U. S. 363, 371 (6 Sup. Ct. Rep. 69).

And I know of no rule of law, in such a case as this, where the manufacturer has tendered goods or machinery in performance of a written order or agreement of purchase, that obliges the purchaser, if the article or articles do not conform to the agreement, to permit the manufacturer to keep on tendering other goods or new machinery until the terms of his contract are performed, unless the contract expressly provides that he shall have such opportunity. When, as in this case, the article delivered is not of the description of the article ordered, the purchaser has a right to reject it, and to rescind the contract *in toto*.

We are cited to *Davis v. Downs*, 4 Mich. 530, to sustain plaintiff's claim that it had the right to remedy the defects in the first monument, or to furnish a new one; but in that case there was no stated time of delivery, and it was held that the purchaser undertook to rescind the contract prematurely, before all the castings were sent, and must pay for all the good castings that were delivered. In the opinion of the Court there is language to the effect that the manufacturers had the right to furnish good castings in the place of those that were defective. If this is good law for that case, it does not apply to the facts in the case now before us. Henry Gitchel ordered a monument to be constructed in a certain way, with certain inscriptions upon it. When delivered, a material inscription was omitted. It was not the monument he ordered. He had the right, under all the authorities, to reject it, because the existence of the omitted inscription, being a part of the description of the thing sold, became essential to the identity of the monument ordered, and a condition the performance of which was precedent to any obligation upon Gitchel to take it. Benj. Sales, § 1349. There being no agreement that the plaintiff might remedy defects, or furnish a new

monument, the contract between the parties was at an end when Gitchel refused to accept the first monument.

The judgment is affirmed, with costs.

The other Justices concurred.