CHARTER GAS-ENGINE COMPANY v. COLERIDGE STATE BANK ET AL.

FILED APRIL 21, 1898.   No. 8048.

1. **Conditional Sales: WARRANTY.** The contract between the parties, set out in the opinion, construed, and *held* not one of absolute sale of property accompanied by the warranty of the vendor as to the qualities of the property, but one of conditional sale, the qualities of the property being of the essence of the contract, and the establishment of their existence a condition precedent to the completion of the sale.

2. ——: ——: **EVIDENCE: REVIEW.** Evidence examined, and *held* to sustain the finding of the jury (1) that the conditions precedent provided for by the contract had never been fulfilled, and that the vendee refused to accept the property conditionally sold him for that reason; (2) that the vendee had not waived the performance of the conditions precedent provided for by the contract.

ERROR from the district court of Cedar county. Tried below before NORRIS, J.   *Affirmed.*

*John Bridenbaugh,* for plaintiff in error.

*J. C. Engelman* and *Miller & Ready, contra.*

RAGAN, C.

The Charter Gas-Engine Company of Sterling, Illinois, wrote a letter to W. M. Shook at Coleridge, Nebraska, in which it stated: "We will furnish you a No. 6 Charter gas engine, thirty-six indicated, twenty-five actual, horsepower, for $1,250. * * * We guaranty that the Charter does not use to exceed one gallon of gasoline in ten hours to each indicated horse-power doing full work, and when part work is done the consumption is in proportion. No settlement is asked for from responsible parties until the engine is running and meets our claims." In response to this Shook sent the engine company the following letter: "You offer me No. 6 Charter gas engine for $1,250, and I now make you this proposition: I will give you $1,250 for a No. 6 Charter gas engine. You deliver it at Coleridge, Nebraska, and give me sixty days' trial. If at the end of sixty days it performs as you guaranty, I will pay cash. I deposit at the Coleridge State Bank the sum of $1,250 immediately on acceptance of this order, subject to your order, provided the engine comes up to guaranty." Under date of August 5, 1892, the engine company responded to Shook's letter as follows: "We accept your proposition of $1,250 for No. 6 Charter, thirty-six indicated, twenty-five actual, horsepower, on cars Coleridge, Nebraska. You to deposit at the Coleridge State Bank the sum of $1,250 on receipt of this acceptance of your order, and to have sixty days' trial of engine to see that it meets our guaranty." Shook deposited the $1,250 in the Coleridge State Bank, to be paid to the engine company in case it should fulfill the requirements of the contract, and the engine company shipped the engine to Coleridge. Shook took possession of it, put it up, and began using it about September 1, 1892. Shook retained possession of the engine for more than sixty days after he received it, and while it was in his possession it was destroyed by fire. The engine company brought this suit against the bank

in the district court of Cedar county to recover the price of the engine deposited with it by Shook. The bank, in its answer, interpleaded Shook, disclaimed any interest in the money in its hands, and offered to pay it to whomsoever the court should direct. Shook was brought into the case and filed an answer, in which he set out the contract between himself and the engine company under which he came into possession of the engine, and interposed as a defense to the action that the engine did not come up to the requirements of the contract, in that it did not furnish the horse-power it was guarantied to furnish; that it used more gasoline than it was warranted to use, and in consequence of the failure of the engine to meet the requirements of the contract he had never accepted the same. He admitted that he retained possession of the engine more than sixty days after receiving it, but that he did so at the request of the engine company for the purpose of continuing the trial of the engine and for the purpose of determining if it would finally meet the requirements of the contract, and that while it was thus in his possession it was destroyed by fire, without any fault or negligence on his part. The trial resulted in a judgment awarding Shook the money in the bank and a judgment against the engine company for the freight on the engine from Illinois to Nebraska, which Shook had advanced for the engine company at its request. To review this judgment the engine company has filed a petition in error in this court.

1. The first question presented by the record is: What is the proper construction of the contract between Shook and the engine company? Was the contract an actual sale and delivery of the engine, accompanied by the vendor's warranty that it would meet certain requirements, or was the contract one of conditional sale, the sale to become effective only if, after trial of the engine, it met the requirements of the vendor's warranty? We do not think this contract was one of an absolute sale and delivery of the engine, accompanied by the warranty

of the vendor that the engine would come up to certain requirements, and that in case it failed to do so, the vendee might rescind the contract and return the engine or retain it and sue the vendor for damages. This engine was ordered by Shook for a specific purpose to perform a specific work, namely, the operation of mill machinery. If the engine, after being tried, met the requirements of the contract under which it was delivered to Shook, then it was a sale; if not, it was no sale. These conditions of the contract, that the engine should develop a certain horse-power and in so doing consume a certain amount of specified fuel, were of the essence of the contract; were conditions precedent to the completion of the sale; and if the engine, upon trial, did not meet the conditions of the contract, Shook was under no obligation to accept the engine. (*Jones v. United States*, 96 U. S. 24; *Pope v. Allis*, 115 U. S. 363; Benjamin, Sales [2d ed.] sec. 565.)

2. The second question presented by the record is the sufficiency of the evidence to sustain the jury's finding that Shook's retention of the engine for more than sixty days after he received it was with the consent of the engine company and for the purpose of continuing the trial of the engine, endeavoring to make it come up to the requirements of the contract between Shook and the engine company; and that Shook had not waived the performance of the conditions precedent in pursuance of which the engine was delivered to him. We think the evidence shows beyond all question that this engine never developed twenty-five actual nor thirty-six indicated horse-power, and that it consumed more than one gallon of gasoline in ten hours to each indicated horse-power developed; and that Shook never accepted this engine and thus consummated the sale; and that he refused to accept it because the engine did not come up to the requirements of the contract. We think, also, that the evidence sustains the jury's finding, that Shook's possession of this engine for more than sixty days after he

received it was with the permission of the engine company and with its knowledge; that the engine had not met the requirements of the contract, and that Shook had not accepted it. After Shook had retained the engine for more than sixty days, and after the engine company knew that he had refused to accept it because of its failure to meet the requirements of the contract, the engine company sent an expert to Coleridge, who endeavored to make this engine do the work for which it was sold and which it was warranted to do. The evidence shows that he failed and that the engine failed at all times after that, although Shook seems to have been, in good faith and with the knowledge of the engine company, trying to make the engine meet the requirements of the contract. The finding of the jury that Shook, by retaining the engine more than sixty days, had not waived the conditions precedent and elected to accept the engine is sustained by the evidence. This case is distinguishable from *Moline, Milburn & Stoddard Co. v. Pereau*, 52 Neb. 577. In the Pereau case there was an absolute sale and delivery of the chattel accompanied by the vendor's warranty. In the case at bar the sale was to take effect—to be a sale—only if the engine on trial developed certain specified power and consumed only a certain amount of a specified fuel for each horse-power developed. These conditions precedent the engine did not meet; they were not waived by Shook and the sale never became absolute. The judgment of the district court is

AFFIRMED.