LIBMAN and another, Appellants, vs. FOX-PIONEER SCRAP IRON COMPANY, Respondent.

*November 16—December 13, 1921.*

*Sales: Statute of frauds: Delivery of goods: Failure to conform to contract requirements: Misdirected shipments: Drafts in excessive amounts: Passing of title: Remedies of buyer: Customs: Evidence: Sufficiency.*

1. Where plaintiffs claimed both an oral and a written contract with defendant containing substantially the same terms and that they had shipped goods pursuant to the oral contract, they had the burden of proving that the goods delivered to and accepted by defendant were delivered under the oral contract.

2. Delivery of goods alone is not sufficient to take an oral contract out of the statute of frauds, but it must be made under and pursuant to the contract.

3. In an action for breach of a contract to purchase scrap iron, evidence that the goods tendered for delivery contained many articles not covered by the contract, that some of the car-

loads shipped were misdirected, and that the drafts attached to bills of lading for other cars were for more than the contract price, is *held* to sustain the action of the trial court in setting aside the findings of the referee of tender under the contract.

4. Under sub. 2, sec. 1684*t*—20, Stats., providing that if the property would have passed to the buyer on shipment except for the form of the bill of lading the seller's property in the goods shall be deemed to be only to secure the performance by the buyer of his obligation, the beneficial title to the goods does not pass on shipment where they did not conform to the contract of sale or were misdirected.

5. Evidence that previous carloads of scrap iron containing boilers and sheet iron had been accepted, but only after the buyer had procured an adjustment for the goods not covered by the contract, does not sustain a finding by the referee that there was a custom for such goods to be included in shipments of scrap iron and to be paid for at the market price.

6. Under sub. 3, sec. 1684*t*—44, Stats., providing that where the seller delivers the goods sold mixed with goods of a different description the buyer may accept those in accordance with the contract and reject the rest, or may reject the whole, the buyer of scrap iron could reject the whole of shipments containing boilers and sheet iron, or which were misdirected so as to impose demurrage charges, or for which drafts attached to the bill of lading were drawn for amounts exceeding the contract price.

Appeal from a judgment of the circuit court for Racine county: George Thompson, Judge. *Affirmed.*

Contract for sale of goods. The following contract was entered into at Racine, Wisconsin, between the parties:

"Racine, Wis., June 13, 1917.

"Libman Brothers of Wausau, Wisconsin, agree to sell and *Fox-Pioneer Scrap Iron Company* agrees to buy—

"15 carloads of country mixed scrap iron to consist of all the small blacksmith shop scrap, cast iron, and to contain about two tons of stove plate to the car, otherwise free from boilers and sheet iron, at a price of $22 per net ton f. o. b. cars Racine, Wisconsin;

"Western Railway Weighing Association weights to govern settlement;

"Sight draft in full, less freight, attached to bill of lading.

"Delivery to be made within forty days.

"Shipment to be made to Racine, Wis.

       "FOX-PIONEER SCRAP IRON COMPANY,

        "Per M. L. Fox.

"Accepted: Libman Bros.,

 "By M. Libman."

Plaintiffs claim performance on their part and allege that the defendant refused to accept fourteen cars tendered for delivery under the contract, resulting in damages to the plaintiffs in the sum of $8,000. The defendant admitted the making of the contract, alleged that defendant accepted and paid for six carloads of scrap iron shipped under the contract, further alleged, by way of counterclaim, that plaintiffs violated the contract on their part by shipping excessive quantities of stove plate, sheet iron, and other material expressly excluded by the terms of the contract, by drawing drafts for amounts in excess of the contract price, by misdirecting the cars so that demurrage accrued on their arrival, and that, by reason of being compelled to pay the drafts in order to obtain possession of the cars, the defendant had overpaid the plaintiffs the sum of $512.63, for which amount the defendant counterclaimed. The case was referred to a referee to hear, try, and determine, and trial before the referee was begun July 5, 1918. The referee filed his report on April 24, 1920, finding in favor of the plaintiffs, and assessing their damages at the sum of $3,041.76, against which he allowed a setoff in the sum of $343.26, which he found due the defendant on its counterclaim, and awarded judgment in favor of the plaintiffs accordingly. The defendant duly excepted to the findings of the referee and moved for findings in its behalf, and upon hearing before the court the referee's report was, in the main, set aside, except as to the amount found due the defendant on its counterclaim, as to which the report was confirmed, and from judgment entered in favor of the defendant the plaintiffs appeal.

For the appellants there was a brief by *Fawcett & Dutcher*

and *Rubin, Wurster & Rouiller,* attorneys, and *W. B. Rubin* and *C. F. Rouiller,* of counsel, all of Milwaukee, and oral argument by *Mr. Rouiller* and *Mr. George C. Dutcher.*

For the respondent there was a brief by *Simmons & Walker* of Racine, and oral argument by *John B. Simmons.*

ROSENBERRY, J.  Upon the trial it was contended by the plaintiffs that prior to the making of the written contract there was an oral contract for five cars of scrap iron between the parties which, in terms, was identical with the written contract of June 13, 1917.  Much of the controversy turns on the question of whether or not there was such an oral contract.  The trial court, reviewing the findings of the referee, did not set aside the finding to that effect.  In the disposition which we make of this case we regard it as immaterial whether or not there was such an oral contract. In addition to setting aside the findings of the referee the trial court found affirmatively that the plaintiffs breached the written contract by failing to ship to the defendant the material called for by the contract; also by failing to bill cars in such manner and to send drafts and bills of lading in such manner and form and in proper time to allow prompt delivery of cars and avoid the accruing of demurrage thereon; also by drawing drafts in excess of the purchase price of the contents of the cars, less deduction for freight, and by refusing and neglecting to pay defendant such amounts as it had been obliged to pay by reason of overdrafts.  These findings, and each of them, are amply sustained by the evidence.  It is undisputed that the plaintiffs never specified that any of the cars shipped were to be applied upon the oral contract.  No mention was ever made of it by the plaintiffs during the entire period of attempted delivery.  The burden was on the plaintiffs to show acceptance under the oral contract of a part of the goods at least, otherwise the contract was void under sec. 2308, Stats. (statute of frauds).  There is not a scintilla of evidence that tends

to show such delivery. The plaintiffs testified that they did not attempt to make such a delivery. There is a claim to that effect, but no evidence to sustain it. Delivery of goods alone is not sufficient to take the contract out of the statute. The delivery must be under and pursuant to the contract. *Matthiessen v. McMahon's Adm'r,* 38 N. J. Law, 536; *Atherton v. Newhall,* 123 Mass. 141. See 25 Ruling Case Law, p. 624, § 242.

It is equally certain that the defendant applied such shipments as were accepted to the written contract, and constant reference was made to the contract of June 13th, and settlements were made in accordance with its terms. While much of the testimony might apply to either contract, due to the fact that the claimed oral contract was identical in terms with the written contract, there was enough to show that the written contract was the one under consideration by the parties. References in the correspondence establish that fact without dispute.

Considerable argument is made to the effect that the trial court did not give sufficient effect to the rule that the findings of a referee are to be regarded by the trial court on review as having the same dignity as findings of the circuit court when such findings are challenged here. *Ott v. Boring,* 139 Wis. 403, 121 N. W. 126. We are of the opinion that under the evidence in this case the trial court correctly set aside the findings of the referee within that rule. The undisputed testimony shows that no car complying with the terms of the contract as to the quality of material was properly tendered. The cars either contained material not covered by the contract, or were accompanied by drafts for an amount in excess of the selling price, or were misdirected. In a number of cases where the tender was accepted and delivery made, the plaintiffs were required to make adjustments, agree to pay overdrafts and accept deductions, in order to procure an acceptance of the goods tendered. After repeated warnings they still continued to ship non-contract

material and to attach the bill of lading to drafts for amounts in excess of the selling price and improperly consigned shipments. Of the fourteen cars remaining undelivered thirteen were sold to local dealers in Racine and one returned to Wausau. The thirteen cars were found to contain eight boilers from six to eight feet long, not less than thirty-six inches in diameter, 107,200 pounds of stove plate, a large quantity of sheet iron, and other material which would have to be cut up at considerable expense. The car returned to Wausau, according to the plaintiff's testimony, consisted of about eighteen or nineteen tons of sheet iron, about ten tons of plow points, and some boiler plates. The referee proceeded upon a mistake of law as to what constitutes a valid tender of goods and held the defendant liable as if there had been a tender of goods under the contract which the defendant was bound to accept.

It is claimed on behalf of the plaintiffs that title to the goods passed to the defendant under the provisions of sub. 2, sec. 1684*t*—20, Stats.

"Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."

By attaching the bill of lading to a sight draft indorsed to a third party, in this case the Citizens Bank of Wausau, title to the goods passed to the bank and could not vest in the defendant until the draft was paid. *American Thresherman v. Citizens Bank,* 154 Wis. 366, 141 N. W. 210. If the title of the bank be regarded as qualified and to be held only as security for payment of the purchase price, the defendant did not become the owner of the beneficial title to the goods, where the goods shipped were not those ordered or where the consignment was misdirected. In order to make the rule of

transfer of beneficial title operative, the seller must act in conformity with the terms of the contract. Williston, Sales, § 278, and cases cited. In this case the goods contracted for were shipped mixed with goods not covered by the contract, which gave the defendant the right to reject them. Some of the shipments were misdirected and in other cases the draft called for payment of an amount in excess of the contract price of the goods. The seller failed to conform to the contract and the beneficial ownership of the goods did not pass to the buyer.

One of the principal questions in this case is whether or not the plaintiffs tendered goods of the kind and quality specified in the contract of June 13th, and upon that point the referee made no findings whatever. The findings of the referee attempt to meet that situation by a finding to the effect that it had been customary in the dealings between the parties to include boilers and other material than country mixed iron in the shipments of the plaintiffs and that the defendant had received the same and allowed the market price therefor. We find no evidence in the record to sustain such a finding. The fact that on the six cars accepted adjustments were made before delivery does not tend to establish a custom, but, quite the contrary, it shows there was no custom. Had there been such a custom as claimed, there would have been no need of prior adjustment in each case before acceptance of shipments.

By the provisions of sub. 3, sec. 1684t—44, Stats., it is provided:

"Where the seller delivers to the buyer the goods he con- tracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole."

Eleven of the fourteen cars contained material not in accordance with the contract, which the defendant was justified in rejecting. See 2 Mechem, Sales, §§ 1203, 1208; *Pope*

*v. Allis,* 115. U. S. 363, 6 Sup. Ct. 69; *Grenawalt v. Roe,* 136 Wis. 501, 117 N. W. 1017. The remaining cars were either misdirected or accompanied by drafts in excess of the amount of the selling price, which the defendant would have been required to pay in order to obtain possession of the cars. This it could not be required to do. As a condition of having the goods delivered to it by the railway company it was required to pay no more than the contract price. The drawing of drafts by the plaintiffs in excess of the contract price appears not to have been a mere mistake, but was a practice followed by them almost uniformly, and, as the trial court found, they breached their contract by failing to repay to the defendant, in cases where cars were accepted, the amount of the drafts in excess of the contract price.

Whether or not there was an oral contract becomes immaterial also for the reason that goods covered by the contract were not properly tendered by the plaintiffs to the defendant either under the written or oral contract, and it was therefore not bound to accept and pay for them.

We call attention to the fact that the printed case here does not comply with Rule 6. It contains matter arranged argumentatively, is not an abridgment of the record in narrative form, and not properly arranged. Cases so prepared add materially to the burden of work here and make constant reference to a long record necessary. The correct practice in preparing a case is plain and simple and should be followed.

*By the Court.*—Judgment affirmed.