### Hoopes Bros. and Thomas Co. v. McMenamin.

*Sales—Contract—Delivery—Passing of title—Warranty—Right of inspection—Act of May 19, 1915, P. L. 543.*

1. Where a contract of sale of nursery products provided that they should be of first-class quality and delivered in good condition and that deliveries should be made during three months specified at a designated station of destination, the purchaser is entitled to the right of inspection and the title to the goods does not pass by mere delivery at the station designated.

2. Where suit is brought for the price of such goods, an affidavit of defence is sufficient which avers that defendant never received a bill of lading for the goods, nor any notice of their delivery at the station designated, and that after long delay and repeated inquiry she finally found them at the station, but that an inspection showed that they were in a defective condition.

Rule for judgment for want of a sufficient affidavit of defence. C. P. Montgomery Co., June T., 1923, No. 34.

*R. C. Gourley*, for plaintiff; *H. I. Fox*, for defendant.

WILLIAMS, J., Oct. 29, 1923.—The defendant, the wife of Michael J. McMenamin and a resident of the village of Merion, in the Township of Lower Merion, this county, in her affidavit of defence, in effect, admits that on the 21st day of November last she signed a spring box order, wherein she asked the plaintiff, a domestic corporation, engaged in the growing of trees and plants at the Borough of West Chester, Chester County, during March, April or May of this year, for the improvement of her property, to send her and deliver at Cumberland, Maryland, station, certain nursery stock, described as 198 peach trees, of seven different kinds, 199 grape vines, of three separate varieties, and 300 raspberry bushes, for which she agreed to pay in cash $389.33, and stated that if, within five days after the arrival of the stock, she failed to call for it, she thereby authorized the plaintiff, for her and on her account, to deliver the stock on her premises and charge her with the cost of delivering.

In the box order the plaintiff agreed that the stock should be of first class quality and delivered in good condition.

The defendant denies that the plaintiff, in accordance with the above written contract between it and her, sold and delivered the stock as ordered, at the time and place and in the quantities and varieties specified by her in the order and that on May 4th the goods were consigned to her and arrived at Cumberland station. She avers that, on the contrary, she did not designate the manner of the shipment of, or select the carrier for, the stock; that the

Hoopes Bros. and Thomas Co. v. McMenamin.

plaintiff did not inform her when or from where the goods would be shipped, or when they would arrive at Cumberland; that, not being informed as to the time or manner of shipment or the name of the carrier of the goods, she made frequent inquiries at Cumberland station, only to be there told that the merchandise had not yet arrived; and that, after weeks of delay, she did, finally, find out that the merchandise had reached Cumberland, whereupon she had made an inspection of the goods and, as a result thereof, then notified the plaintiff that, due to the delay in furnishing her with a bill of lading for the stock and delivering the goods to her, the stock was in a defective condition.

The defendant avers, further, that at no time did she receive a bill of lading for the merchandise and that the stock was never delivered.

It does not appear from the pleadings or record that the rule for judgment was ever served upon the defendant, but, nevertheless, the rule was orally argued at bar before the court *in banc* at the stated session of the court for argument held on the second Monday of October. Although three weeks have since elapsed, as yet the court has not been favored with a brief from the attorney for the defendant. The failure of counsel so to do constitutes a plain and direct violation of our Rule 25, which provides that, in all arguments before the court *in banc*, or before the judges at chambers, counsel for the respective parties shall submit to the court a statement of the points in controversy with a brief of authorities.

The proper determination of the principal questions here involved necessitates a consideration of the provisions of the Sales Act (Act of May 19, 1915, P. L. 543-566), whereof section 74, interpretation shall give effect to purpose of uniformity, says that the act shall be so interpreted and construed, if possible, as to effectuate its general purpose to make uniform the law of those states which enact it.

If these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, the desired uniformity will be missed and, instead, there will be erected upon the foundation of uniform language separate legal structures as distinct as were the former varying laws: Commercial Bank *v.* Canal Bank, 239 U. S. 520-528 (1916), Hughes, J.

Thus admonished by statute and enlightened by decision, we shall consider chiefly only those authorities having special reference to the Uniform Sales Act.

Rule 4 of section 19, rules for ascertaining intention, of the Sales Act of May 19, 1915, P. L. 543, 548-9, declares that, unless a different intention appears, one rule for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer is that: first, where there is a contract to sell unascertained or future goods by description and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer, and that such assent may be expressed or implied and may be given either before or after the appropriation is made; and, second, where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not), for the purpose of transmission to, or holding for, the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section 20, and that this presumption is applicable, although by the terms of the contract the buyer is to pay

the price before receiving delivery of the goods and the goods are marked with the words "collect on delivery," or their equivalent.

Section 20, reservation of right of possession of property when goods are shipped, of the Sales Act of May 19, 1915, P. L. 543-549, to which the exception noted in Rule 4, *supra*, refers, concerns itself with four separate and distinct sets of conditions no one of which bears any relationship to the issue here presented.

Rule 5 of section 19, *supra*, which constitutes the second exception mentioned in Rule 4, *supra*, is, however, that, if the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer, or reached the place agreed upon.

It is to be observed that this rule does not prescribe that the property passes when the goods have been delivered to the buyer, or reached the agreed-upon place, but that property does not pass until the happening of the prescribed eventuality. It does not fix a time when title passes, but only a time before which it cannot pass. All it does is to fix the hithermost limit of time within which title may pass. Upon when, beyond that limit, title shall pass the rule is significantly silent.

Of course, this rule, together with the several other rules prescribed by the 19th section for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer, is a mere rule of presumption and, if a contrary intention appears, must, by the language of the section itself, give way to the intention so appearing: Funt *v.* Schiffman, 187 N. Y. Supp. 666-668 (1921), Lehman, J. (S. C., A. T., 1st Dept.).

Rule 5 is simply declaratory of the common law; that is, it is expressive of the common law rule on the subject whereby it was always the duty of the seller to deliver the goods in accordance with the terms of the contract, the obligation on the part of the seller to do so and payment of the price of the goods by the buyer being concurrent conditions: Harbison *v.* Propper, 183 N. Y. Supp. 508-511 (1920), Giegerich, J. (S. C., S. T., N. Y. Co.).

The fifth rule is based upon a theory analogous to that supporting the second rule—which is that, where there is a contract to sell specific goods and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done—something further remains to be done, not, indeed, to put the goods in a deliverable state but in order to carry out the bargain: Cassinelli *v.* Humphrey Supply Co., 183 Pac. Repr. 523, 525-6 (1919), Ducker, J. (S. C. of Nev.).

Where it is agreed, as part of a contract of sale, that the goods are to be delivered to the buyer at a designated place, delivery to a carrier is not delivery to the buyer and title does not pass until the goods are delivered in accordance with the contract: Conroy *v.* Barrett, 158 N. Y. Supp. 549 (1916), Colahan, J. (S. C., A. T., 1st Dept.). If the delivery is not made in accordance with the terms of the order, it is not considered that the delivery is made to the agent of the buyer and the title and risk remain in the seller: Arons *v.* Cummings, 78 Atl. Repr. 98-99 (1910), Whitehouse, J. (S. J. C. of Me.).

The duty of delivery according to contract is an imperative one. A delivery by any other means, or through any other agency, than the one agreed upon entitles the vendee to repudiate the sale, if he so elect, and any loss or damage to the goods in transit in such circumstances is that of the vendor. If he

would avoid these contingencies and possible comebacks, he must make his delivery in accordance with the terms of the contract: Sullivan v. Gird, 197 Pac. Repr. 575-577 (1921), Ross, C. J. (S. C. of Ariz.).

In the case before us the seller contracted to deliver peach trees, grapevines and raspberry bushes at Cumberland, Maryland, station. The nursery stock shipped may have been appropriated by the seller to the contract, but, as it was the duty of the seller, under the terms of the sale, to make delivery at the station in Cumberland, the fifth rule precludes any question as to the transfer of the title before delivery at the designated place was accomplished. It is, therefore, not necessary to consider what, in the absence of such a stipulation, is the ordinary effect upon the title of delivering goods to a common carrier and of consigning them to the buyer upon a bill of lading issued in the name of either the buyer or seller, whether such bill of lading be or be not forwarded the former. Whether the title to the specific nursery stock under inquiry passed to the buyer as soon as it reached the place of destination depends upon the question as to whether the parties to the sale intended the transfer of the title to occur at that point of time or to be deferred to a later period. In the determination of such an issue the intention of the parties is the controlling factor. This is the plain import to be drawn from the reproduced provisions of the Sales Act which, as has already been stated, simply declare, in this respect, the settled rule of common law: Agri Manuf. Co. v. Atlantic Fertilizer Co., 98 Atl. Repr. 365 (1916), Urner, J. (Md.).

Upon the question of intention in regard to the time when the title should pass, there is in the case nothing beyond the written terms of the contract. No light is shed upon the controversy by evidence of acts of the parties reflecting upon the subject of dispute, except, of course, such as the agreement transparently contemplated. The issue to be decided involves, therefore, the inquiry as to whether there are any conditions of the contract which had the effect of postponing the transfer of the title to the defendant beyond the time of the arrival of the shipment at Cumberland station, it being clear that this effect would not necessarily be produced by the provision in the agreement authorizing the plaintiff, if the defendant, within five days after the arrival of the stock, should fail to call for it, to deliver the same, for her and on her account, upon her premises and charge her with the cost of delivering.

The sale was made upon the representation that the nursery stock should be of first class quality and delivered in good condition. This could be determined only by inspection or examination, or both, after arrival. The representation as to the quality and condition of the goods, of necessity, carried with it a conditional right of rejection on the part of the buyer which could not be exercised until after the shipment to be inspected or examined had reached its destination and become subject to the control of the buyer. Consequently, the fact that the shipment arrived at the station cannot have an all-important bearing upon the question as to the effect upon the title of the provision as to condition and quality.

The decisive inquiry is whether the right to refuse the nursery stock, if an inspection or examination of it, made within a reasonable time after its arrival, demonstrated that it did not conform to the contract, is consistent with the theory that the title had already passed to the purchaser.

A refusal is a rejection of something proposed or tendered. It is a declination to accept. As applied to an offer of property under a contract of sale, the right to refuse the property obviously implies that the title has not yet passed. When, in this case, the seller agreed that the stock should be in quality first class and condition good, necessarily it is presumed to have

understood and intended that the title should vest in the purchaser only in the event that inspection or examination should verify the express warranty as to quality and condition, or that the right to make such an inspection or examination should be waived. These were made by the plaintiff itself alternative conditions precedent to the acceptance by the defendant of the nursery stock: Agri Manuf. Co. v. Atlantic Fertilizer Co., 98 Atl. Repr. 365.

When the subject-matter of a sale is not in existence, or not ascertained at the time of the contract, an undertaking that it shall, when existing or ascertained, possess certain qualities is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract; because the existence of those qualities being part of the description of the thing sold becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted: Pope v. Allis, 115 U. S. 363, 371-2 (1885), Woods, J.

The first paragraph of section 47, right to examine the goods, of the Sales Act of May 19, 1915, P. L. 543, 556, provides that, where goods are delivered to the buyer which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract.

When a vendor sells goods of a specified quality, but not in existence or ascertained, and undertakes to ship them to a distant buyer when made or ascertained and delivers them to the carrier for the purchaser, the latter is not bound to accept them without an examination. The mere delivery of the goods by the vendor to the carrier does not necessarily bind the vendee to accept them. On their arrival, he has the right to inspect them to ascertain whether they conform to the contract and the right to inspect implies the right to reject them if they are not of the quality required by the contract: Pope v. Allis, 115 U. S. 363.

The provisions of the first paragraph of section 47, supra, as to a sale on terms permitting rejection of the goods if they do not pass a prescribed quality, is, in principle, analogous to a sale on trial, concerning which it is said, in the second paragraph of Rule 3 of section 19, supra, that, when goods are delivered to the buyer on approval, or on trial, or on satisfaction, or other similar terms, the property therein passes to the buyer when he signifies his approval or acceptance to the seller, or does any other act adopting the transaction, or if he does not signify his approval or acceptance to the seller but retains the goods without giving notice of the rejection, then, if a time has been fixed for the return of the goods, on the expiration of such time and if no time has been fixed, on the expiration of a reasonable time and that what is a reasonable time is a question of fact: Agri Manuf. Co. v. Atlantic Fertilizer Co., 98 Atl. Repr. 365.

If the seller is to ship the goods, the place of inspection, in the absence of an agreement to the contrary, is the destination of the goods; and, although the buyer may have had the right to inspect before shipment, he may waive that right and, relying on the warranty, accept the goods: A. O. Anderson Trading Co. v. Brody, 184 N. Y. Supp. 383 (1920), Laughlin, J. (S. C., App. Div., 1st Dept.).

In addition to the express warranty hitherto noted there was in this case, also, an implied warranty on the part of the plaintiff that the trees, vines and bushes would be of merchantable quality, for the second exception of section 15, implied warranties of quality, of the Sales Act of May 19, 1915, P. L. 543, 547, provides that where goods are bought by description from a

seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

As the first exception of section 15, *supra*, declares that, where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose, the plaintiff impliedly warranted, also, that the nursery stock would be reasonably fit for the improvement of the property of the defendant.

As in the case of the express warranty of quality and condition, the defendant could not have ascertained whether the stock was of merchantable quality and reasonably fit for intended purpose until after the arrival of the goods and their passage into her dominion and under her control. This negatives the assumption that it was the intention of the parties that title to the merchandise should pass at Cumberland station and, hence, the presumptions stated in Rules 4 and 5, *supra*, do not and cannot arise.

In this connection, it is to be borne in mind, too, that the old distinction between an implied warranty of condition that the goods sold shall comply with the description and an express warranty that the goods shall be of the quality named has, for most purposes, been abrogated by the first paragraph of section 11, effect of conditions, of the Sales Act of May 19, 1915, P. L. 543, which is that, where the obligation of either party to a contract to sell or a sale is subject to any condition which is not performed, such party may refuse to proceed with the contract or sale, or he may waive performance of the condition, and that, if the other party has promised that the condition should happen or be performed, such first mentioned party may also treat the non-performance of the condition as a breach of warranty: Knight and Bostwick *v.* Wilson, No. 477, November Term, 1922, not reported.

In the absence of express or implied agreement of the parties, even acceptance of the goods by the buyer does not discharge the seller from liability, in damages or other legal remedy, for breach of any promise or warranty in the contract to sell or the sale, section 49, acceptance does not bar action for damages, of the Sales Act of May 19, 1915, P. L. 543, 557, and, similarly, in fundamental principle, division A of the first paragraph of section 69, remedies for breach of warranty, of the Sales Act of May 19, 1915, P. L. 543, 526-3, provides that, when there is a breach of warranty by the seller, the buyer may accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price.

The defendant alleges in her affidavit of defence that she has been put to great inconvenience and loss by reason of her failure to receive the goods. Even if we were forced to hold, which we are not, that title to the stock passed to her at the station, in a suit against her by the plaintiff for the purchase price of the merchandise, she could still set up against it, by way of recoupment in diminution or extinction of such price, the damages she has suffered through the breach by the plaintiff of any one or all three of the warranties, express or implied, appearing in the contract or, by operation of law, therefrom arising.

And now, Oct. 29, 1923, the motion for judgment is overruled and dismissed and, as justice requires, the rule is discharged.

From Aaron S. Swartz, Jr., Norristown, Pa.

NOTE.—Knight and Bostwick *v.* Wilson, *supra*, has since been reported in 40 Montg. Co. Law R. 149.