**UNITED STATES v. SECURITIES CORPO-RATION GENERAL et al. (eleven cases.)**

**WHITE, Treasurer of the United States, et al. v. SAME (eleven cases).**

(Court of Appeals of District of Columbia. Submitted January 7, 1925. Decided March 2, 1925.)

Nos. 4201–4208, 4216–4229.

**1. War ⊕12—German government not necessary party to suit against Alien Property Custodian to enforce payment of notes given by it out of funds held to its credit.**

Under Trading with the Enemy Act, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½aa), and section 9, as amended, Imperial German government, or its successor. is not necessary party to suit against Alien Property Custodian and Treasurer of United States to enforce payment of notes given by it out of funds held to its credit.

**2. International law ⊕10—Neither Congress nor courts can require foreign sovereignty to become party defendant.**

Neither Congress nor courts can require foreign sovereignty to become party defendant to any action.

**3. International law ⊕10—Debts due from friendly nation cannot be enforced in courts of creditor nation.**

Debts due from friendly nation cannot be enforced in courts of creditor nation.

**4. War ⊕12—United States not proper party to suit to enforce payment of German government's notes from funds held by Alien Property Custodian; "person."**

The United States is not a "person," within Trading with the Enemy Act, § 9, as amended, and is not proper party to suits against Alien Property Custodian and United States Treasurer to enforce payment of notes given by Imperial German government out of funds held to its credit, though it has claims against that government.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person.]

**5. War ⊕12—Though fund held to credit of Imperial German government may be insufficient to meet claims, suit by creditor does not call for marshaling of claims or prorating of fund.**

Under Trading with the Enemy Act, § 9 (a), as amended, though fund held by Alien Property Custodian to credit of Imperial German government may be insufficient to meet outstanding claims asserted against it, suit by creditor of that government does not call for marshaling of claims or a prorating of such fund among creditors, and existence of other claims is immaterial.

**6. Evidence ⊕208(2), 265(8)—Answer filed by Alien Property Custodian, admitting existence of fund to credit of Imperial German government, held competent evidence in another suit, and sufficient, with department records, to establish its existence.**

In suit by holders of notes given by Imperial German government against Alien Property

Custodian and Treasurer of the United States to enforce payment from fund held to credit of that government, answer under oath, filed by defendants in another suit. admitting existence of such fund, *held* competent evidence, and sufficient, together with records of Treasury Department, to establish its existence.

**7. Evidence ⊕357 — Letter attempting to transfer part of fund held to credit of German government to account of unknown enemy held inadmissible in action to enforce claim against such fund.**

Alien Property Custodian, who directed United States Treasurer to transfer fund held in trust for "unknown enemy" to account with Imperial German government, is without authority, after institution of suit to enforce payment of notes of that government out of such fund, to retransfer portion of fund to account of unknown enemy, and letter attempting to withdraw previous instructions to transfer was inadmissible.

**8. Courts ⊕445—United States, filing suggestions of rights in suits against Alien Property Custodian, held not a party with right of appeal.**

Filing of suggestions of rights by United States, in suits by holders of notes given by Imperial German government to enforce payment thereof out of fund held to credit of that government by Alien Property Custodian and Treasurer of United States, *held* not to render it a "party" entitled, under Code, § 226, to appeal from adverse decree.

**9. Appeal and error ⊕70(½)—Order striking suggestions filed by United States held interlocutory, and insufficient basis for appeal.**

Order striking suggestions of rights filed by United States in suits against Alien Property Custodian *held* mere interlocutory order, and insufficient basis for separate appeal by United States.

**10. Courts ⊕445—Alien Property Custodian and Treasurer of United States have right of appeal from adverse judgment or decree.**

In view of Code, § 226, Alien Property Custodian and Treasurer of United States have right of appeal from adverse judgment or decree, in suit brought under Trading with the Enemy Act, § 9, as amended, in the Supreme Court of the District of Columbia.

Appeal from Supreme Court of the District of Columbia.

Suits by the Securities Corporation General and others against Frank White, Treasurer of the United States, and Thomas W. Miller, Alien Property Custodian, wherein the United States filed suggestions of rights and prayed dismissal of bills, which suggestions were stricken. From decrees for plaintiffs, defendants and the United States separately appeal. Appeals by the United States dismissed. On defendants' appeals, decrees affirmed.

D. H. Stanley, C. W. McClean, and Peyton Gordon, all of Washington, D. C., for appellants.

M. C. Hall and Peyton Gordon, both of Washington, D. C., for appellee Borland.

M. C. Hall, of Washington, D. C., and S. W. Fordyce, Jr., of St. Louis, Mo., for appellees Stralem and others.

F. D. McKenney, J. S. Flannery, and G. B. Craighill, all of Washington, D. C., for appellee Equitable Trust Co. of New York.

M. C. Hall, of Washington, D. C., for all other appellees.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. These cases are here on appeal from final decrees of the Supreme Court of the District of Columbia against appellants White, as Treasurer of the United States, and Miller, as Alien Property Custodian, defendants below, in which White, as Treasurer, is required, in cases numbered 4202, 4204, 4206, 4208, 4217, 4219, 4221, 4223, 4225, 4227, and 4229, to pay to the plaintiff in each case certain sums of money out of funds in the treasury of the United States, seized and held by him as property of the Imperial German government.

These suits were brought in the Supreme Court of the District of Columbia by the holders of certain notes against the Imperial German government, issued and sold by Germany prior to the entrance of the United States into the war. The notes were payable in American currency on April 1, 1917, five days prior to the declaration of war between the United States and Germany. Upon payment of interest in advance the maturity of the notes was extended to April 1, 1918.

Concededly the notes sued on constituted a debt within the meaning of the provisions of section 9 of the Trading with the Enemy Act as amended. 42 Stats. 1511. It is averred in the bills of the respective plaintiffs that the Alien Property Custodian now has in his possession or to his credit in the treasury of the United States funds of the Imperial German government, which were paid and delivered to him under the provisions of the Trading with the Enemy Act, and which are available by law and sufficient in quantity to pay plaintiffs' claims, both principal and interest.

Defendants, Miller and White, filed motions to dismiss the bills of complaint upon the grounds that the Imperial German government, or its successor, is a necessary party to the suits, and that, pursuant to the terms and provisions of the Trading with the Enemy Act and the treaties between the United States and Germany, the United States is the owner of the moneys which plaintiffs seek in these suits to subject to the payment of their claims. The motions to dismiss were overruled, and defendants answered, admitting the citizenship and residence of the plaintiffs, that plaintiffs are "persons" within the meaning of section 9 of the Trading with the Enemy Act, and that the Imperial German government is an enemy within the meaning of the act. But as to other allegations in the bills strict proof was demanded.

After answers were filed by defendants White and Miller, the Attorney General filed in each case a suggestion as to certain rights of the United States, asserting in substance that the German government, as a result of the war, is heavily indebted to the United States; that if the plaintiffs herein and certain other claimants enumerated are permitted to satisfy their claims against the fund now held in the treasury of the United States to the account of the German government, the said fund would be exhausted, and there would be nothing from which the United States and other creditors could secure the payment of their claims; and that such a course would lead to an inequitable preference of creditors. It is then prayed on behalf of the United States that the bills be dismissed; that the claim of the United States be declared a valid and existing indebtedness, which the treasurer should be ordered to pay out of the fund aforesaid; that the court award the United States priority over other claims, or that it be entitled to share pro rata with other claimants in the distribution of the fund; that the court take jurisdiction of the claim of the United States against the Imperial German government, and that the court order the claim of the United States paid out of said fund.

The plaintiffs filed motions to strike out the suggestion upon the grounds, among others, that the suggestion put in issue matters existing between the German government and the United States, neither of which are proper parties to these suits; that the United States is not authorized to file such notice of claims under section 9 of the Trading with the Enemy Act; that the court is without jurisdiction to determine the right of the United States in respect of the claims set up against the Imperial German government; and that it appears on the face of the suggestion that the claims asserted have been settled between the United States and Germany by treaty, and are therefore not matters within the jurisdiction of the court, but are matters for diplomatic intercourse and

settlement between the respective sovereigns. The court sustained the motions to strike, from which the United States has appealed in cases numbered 4201, 4203, 4205, 4207, 4216, 4218, 4220, 4222, 4224, 4226, and 4228.

The cases were heard on bill and answer, and certain evidence adduced, establishing that there was on June 13, 1924, to the account of the Imperial German government, in the treasury of the United States, $2,715,571, more than sufficient to satisfy the plaintiffs' claims. This sum was accounted for by record entries of the Treasury Department showing a fund of $515,571, deposited by the Alien Property Custodian with the Treasurer, in Trust No. 555—Special, "Imperial German Government," and the sum of $2,200,000, transferred by order of the Custodian, March 9, 1923, from Trust No. 9322, "Undisclosed Enemy No. 1," to Trust No. 555—Special, "Imperial German Government."

Three propositions are involved in these appeals:

First, is the Imperial German government a necessary party to these suits?

Second, is the evidence adduced sufficient to establish the existence in the treasury of the United States of a fund belonging to the Imperial German government against which these claims may be asserted?

Third, has the United States the right to set up its claim against Germany as a defense in these suits, in order that it may lay claim to the funds in the treasury which had been seized as funds of the Imperial German government?

[1] We come now to the consideration of the necessity of making the German Nationals, successor of the Imperial German government, a party defendant in the present cases. The seizure of any enemy's property is justified as an act of war. Two courses were open to the United States, in respect of property belonging to an enemy or ally of enemy, either to seize the property and conserve it for future disposition, or to confiscate it. Miller v. United States, 11 Wall. 268, 20 L. Ed. 135. In either case the action of the government would be sustained. Indeed, the property of any enemy or ally of enemy, seized under the Trading with the Enemy Act, so far as its return is concerned, is in a state of confiscation, since Congress specifically reserved to itself its future disposition. The property here in question, concededly enemy property, would be, but for section 9, the property of the United States, subject to whatever disposition Congress might deem proper. The seizure of the funds in question divested the

German government of all title or interest therein, and their subsequent disposition is a matter with which it is not concerned. Munich Reinsurance Co. v. First Reinsurance Co. of Hartford (D. C.) 300 F. 345.

Section 9 of the Trading with the Enemy Act is a remedial measure, affording the method by which property wrongfully seized may be restored to its proper owner, or by which debts "owing from an enemy or ally of enemy" may be recovered out of the property seized. To this extent the United States has relinquished all claims it might otherwise have asserted under confiscation. Recovery under the act may be had either through executive allowance or by decree of a court. In all proceedings, however, against the funds so seized and held, the Alien Property Custodian, or the Treasurer of the United States, or both, are made by the statute the proper defendants. The Alien Property Custodian stands in the relation of a common-law trustee. His appearance as defendant furnishes all the protection to which the parties are entitled.

The silence of the Trading with the Enemy Act, as to the right or necessity of an enemy or ally of enemy to be made a party defendant, is significant. The act in section 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½aa), among other things, defines the term "enemy" as follows: "The word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this act: * * * (b) The government of any nation with which the United States is at war, or any political or municipal subdivision thereof, or any officer, official, agent, or agency thereof." The act further defines the meaning of the term "person" and the meaning and significance of the words "United States." The German government, therefore, was an enemy of the United States, within the terms of the Trading with the Enemy Act.

[2] The object of section 9 was to give a speedy and efficient remedy to nonenemy persons against losses and inconvenience liable to result from the strict enforcement of the act. To have required the joinder of the enemy owner, as a party defendant in each instance, would have amounted to a denial of remedy to nonenemy creditors. This situation was well known and manifest to Congress. It may well be that an enemy owner, for example, the German government in the present cases, could, upon request, be made a party defendant. McVeigh v. United States, 11 Wall. 259, 20 L. Ed. 80. But this could only be done at the request of the sovereign itself. No power resides in Con-

gress or in the courts to require the sovereignty of Germany to become a party defendant in any action. This could only occur through the act of the sovereign itself.

[3] It follows, therefore, that inasmuch as the German government cannot be brought into court, except at its own election, the court would be without jurisdiction of these cases, and the act would be a mere nullity. It is elementary that debts due from a friendly nation cannot be enforced in the courts of the creditor nation.

[4] In proper sequence, the contention that the United States is a proper party to these suits may next be considered. This is urged substantially upon two grounds: First, that the United States may enforce a prior claim against this money in the hands of the defendants in order to protect itself against losses sustained during the war; second, that the fund should be held by the defendants to satisfy claims arising under the provisions of the treaty of peace made between Germany and the United States on August 25, 1921 (42 Stat. 1939), which embraces all persons, citizens of the United States, who suffered damages and injuries to person or property at the hands of the Imperial German government.

Again, the silence of the Trading with the Enemy Act, as to the necessity of the United States being made a party to suits brought under section 9, and the specific designation of the Alien Property Custodian, or the Treasurer, or both, as defendants, is significant. It is nowhere provided in the act that enemy funds in the possession of the defendants may be subjected to the payment of claims due the United States. Nor do we think that the United States is a "person," as mentioned in section 9 of the act, or such a party as can take advantage of the provisions thereof. It may be suggested that if, as contended, the United States can assert a claim in the courts against this fund, the action should be brought by the United States directly, it cannot be asserted through intervention by way of suggestion, or by motion to dismiss in the present cases. In other words, the United States has no such interest in the fund here in question as can be affected by the present suits. The fund has been set aside by the act for the satisfaction of such claims as may be legally brought against it by claimants other than the United States. The United States has relinquished any interest it may have had in the fund in favor of creditors of the enemy, in this instance the German government. The claims here asserted are there-

fore not against the United States. "While the suit, as held in Banco Mexicano v. Deutsche Bank, 263 U. S. 591, 603, 44 S. Ct. 209, 68 L. Ed. 465 (affirming 53 App. D. C. 266, 289 F. 924), is one against the United States, the claim was not against it. No debt was alleged to be owing from it to the plaintiff." Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. —— (October term, 1924). In other words, the rule of sovereign immunity from liability does not apply.

[5] The contention that in addition to plaintiffs' claims there are outstanding claims being asserted against the fund in question, which in the aggregate amount to $3,257,945, or more than the amount of the fund now in the treasury, is of no importance. Section 9 (a), as amended, provides, among other things, as follows: "If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

It is clear from the terms of the act that a suit brought under it is not in the nature of a creditor's bill calling for a marshaling of claims, nor does it give any preference to one creditor over another, or call for a sharing pro rata with other creditors in the funds against which the claims are made. This court has no jurisdiction over the outstanding judgments, nor is it concerned with the ability of the fund in the treasury to meet the various claims against it. The contentions of the government in these particulars might have been provided for by Congress, but they were not, and the court must apply the law as it finds it.

Coming now to the question of the sufficiency of the evidence adduced by plaintiffs to sustain the judgments of the court in the respective cases, there appears in paragraph 8 of the bill of complaint the following allegation: "That the Alien Property Custodian now has in his possession or to his credit in the treasury of the United States funds of the Imperial German government, which were paid and delivered to him under the provisions of said Trading with the Enemy Act, as amended, and which are available by law, sufficient to pay the entire indebtedness,

both principal and past due interest owing to complainant."

The defendants, answering this paragraph, alleged that they had no knowledge or information sufficient to form a belief with respect to the averments of paragraph 8 of the bill of complaint, and therefore demand strict proof thereof. In support of this averment of the plaintiffs, the answer filed by the defendants Miller and White in the case of Mechanics' Securities Corporation v. Frank White, as Treasurer of the United States, and Thomas W. Miller, as Alien Property Custodian, then pending in the Supreme Court of the District of Columbia, and submitted on this appeal as No. 4195, was offered and received in evidence over objection and exception by defendants. The answer in that case, made under oath by the defendants, set forth that the Custodian had turned over to the Treasurer $515,571, which was deposited in Trust No. 555—Special, "Imperial German Government," and that there had been transferred to the same trust $2,200,000 from Trust No. 9322, "Unknown Enemy No. 1," making a total credited to Trust No. 555—Special, "Imperial German Government," of $2,715,571. The status of these respective trusts was also shown by true copies of record entries from the Treasury Department, which were put in evidence.

[6] This was unquestionably competent evidence and sufficient in character to establish a prima facie case as to the existence of funds seized from the Imperial German government, and held in the treasury, against which the claims of plaintiffs could be asserted. As was said in Pope v. Allis, 115 U. S. 363, 370, 6 S. Ct. 69, 72 (29 L. Ed. 393): "When a bill or answer in equity or a pleading in an action at law is sworn to by the party, it is competent evidence against him in another suit as a solemn admission by him of the truth of the facts stated. Studdy v. Sanders, 2 D. & R. 347; De Whelpdale v. Milburn, 5 Price, 485; Central Bridge v. Lowell, 15 Gray, 106; Bliss v. Nichols, 12 Allen, 443; Elliott v. Hayden, 104 Mass. 180; Cook v. Barr, 44 N. Y. 156; Taylor on Evidence (7th Ed.) § 1753; Greenleaf, Evidence, §§ 552, 555."

[7] The truth of these statements is not controverted. The only attempt made by defendants to rebut this testimony was the offer of a copy of a letter, dated March 14, 1924, from the Alien Property Custodian to the Secretary of the Treasury, attempting to withdraw the instruction sent to the Secretary of the Treasury, under date of March

10, 1923, directing the transfer of the $2,200,000 from Trust No. 9322 to Trust No. 555—Special, "Imperial German Government." The court sustained the objection of plaintiffs to the admission of this letter in evidence, to which ruling defendants excepted. It is contended by plaintiffs that it was beyond the power of the Custodian to thus shift the fund during the pendency of these suits. Counsel for defendants, on the contrary, state in their brief that "the plaintiff in the cause must rely as to the $2,200,000 above upon the instructions given by the Custodian after the money had been seized as belonging to an unknown enemy. If the Custodian had authority to change the ownership of the money at the time referred to in the original answer, he had just as much authority to change it and order it held to the credit of the unknown enemy again."

We are not impressed by this contention. The transfer of the $2,200,000 to Trust No. 555—Special, "Imperial German Government," on March 8, 1923, was a determination by the Custodian of the enemy ownership of the fund. It amounted to a finding, after investigation, that the fund should be held "for, by, on account of, or on behalf of, or for the benefit of" the Imperial German government. There was no change of the ownership by the Custodian when the fund was transferred on March 8, 1923, since there is nothing in the record to indicate that the ownership up to that date had been specifically determined. The Custodian then, exercising the power imposed upon the President, determined specifically the enemy ownership of this fund. In further support of the lack of evidential effect of the letter of March 14, 1924, it contains no reasons, nor is it supported by any evidence, which challenges or affects the correctness of the former determination of enemy ownership.

It was not within the power of the Custodian to defeat the present actions, during their pendency in the court below, by his attempted transfer of the fund back to "Unknown Enemy Trust No. 9322." In case of suit, the statute itself provides for the retention of the money or property in the custody of the Alien Property Custodian or the Treasurer of the United States, to await the final judgment or decree. It is clear, therefore, that the Custodian, having determined the question of enemy ownership, and having designated the fund in the treasury to which it belonged, could not, without at least good and sufficient reason, by the mere transfer of this fund, so change the status of the property in litigation as to destroy

claimant's cause of action while suit was pending.

[8, 9] In the appeals against the Equitable Trust Company of New York, Nos. 4207 and 4208, counsel for appellee company challenge the right of the United States to prosecute an appeal in these cases under section 226 of the Code of the District of Columbia, providing that "any party aggrieved by any final order, judgment, or decree of the Supreme Court of the District" may appeal to this court. The objection is based upon the ground that the United States "was not a party in any sense or aspect of the case in the court below, and it never at any time sought to have itself made a party by intervention or otherwise." Consequently there is no final order or decree from which it may appeal. We think this objection to the right of appeal by the United States must be sustained. No petition was filed in the court below by the United States for right to intervene, nor can the suggestion filed be treated as a petition for intervention. The order striking the suggestion from the files was a mere interlocutory order, which could not furnish the basis for a separate appeal. The attempt here made by the United States is to conduct separate appeals, and thereby avoid any connection with the original cases.

The lack of necessity for intervention by the United States is apparent. The Alien Property Custodian and the Treasurer are made defendants by the express terms of the act, and as such have power to defend the interests of the United States. This they have attempted to do in the original cases by motion to dismiss for lack of proper parties. In support of this motion they could have advanced all the reasons for making the United States a party defendant that have been suggested in the paper sought to be filed in the court below. The appeals of the United States in these cases will be dismissed.

[10] Counsel have likewise challenged the right of appeal to this court by the Alien Property Custodian and the Treasurer, on the ground that the Trading with the Enemy Act is a special statute, and, in the absence of specific provision for appeal, appeal cannot be prosecuted under section 226 of the District Code. The act provides specifically for appeals in cases arising under it from the District Courts of the United States to the Circuit Courts of Appeals, but makes no provision specifically for an appeal to this court from the judgment or decree in a suit instituted in the Supreme Court of the District of Columbia.

Without stopping to review this contention at length, we are of opinion that it was the intention of Congress that a right of appeal should be retained in all cases brought under the act, and inasmuch as many of these cases have been appealed and considered by this court, and a number of them on further appeal considered by the Supreme Court of the United States, without this objection having been heretofore interposed, we will refuse now to interrupt this course of procedure. We hold, therefore, that the right of appeal in these cases is within the provisions of section 226 of the District Code.

In the aforesaid cases in which the United States is appellant, the appeals are dismissed. In the cases in which Frank White, Treasurer of the United States, and Thomas W. Miller, Alien Property Custodian, are appellants, the decrees are affirmed, with costs.

Petition for allowance of appeal to the Supreme Court of the United States allowed May 4, 1925.