## NORTHERN TRUST CO., v. WOODSON,
### Alien Property Custodian, et al.
### No. 5810.

United States Court of Appeals for the
District of Columbia.

Argued May 15, 1934.

Decided June 25, 1934.

Rehearing Denied Sept. 7, 1934.

Lucius Q. C. Lamar, Aubrey B. Fennell, and T. Howard Duckett, all of Washington, D. C., for appellant.

Thomas E. Rhodes, H. B. Cox, J. J. Greenleaf, Frank W. Mondell, Thomas H. Creighton, Jr., and Harry LeRoy Jones, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decree of the Supreme Court of the District of Columbia denying appellant's claim to certain funds in the hands of the Alien Property Custodian and the Treasurer of the United States. The appeal is prosecuted by the administrator of the estate of Robert J. Thompson, deceased, original plaintiff herein.

It appears that in January, 1918, the Alien Property Custodian seized from Lee Higginson & Co., of Boston, Mass., Speyer & Co., Kuhn, Loeb & Co., J. & W. Seligmann & Co., and the Guaranty Trust Company, of New York, approximately $5,120,000, of which he deposited $5,077,000 in the Treasury of the United States to his account, in trust No. 9322, "Undisclosed Enemy No. 1"; and

the balance he deposited in the Treasury of the United States to his account in trust No. 465, "Reichsbank Direktorium."

Thereafter the Reichsbank, through its attorney, filed with the Alien Property Custodian a notice of claim to the funds in the above trusts, less $2,200,000 paid out by the Alien Property Custodian and the Treasurer, with the consent of the Reichsbank; and later, in September 1928, filed its evidence showing that it was a private corporation, and as such the owner of said funds. In February, 1929 the Alien Property Custodian rendered a decision on the claim of the Reichsbank holding that it was a private corporation, and was the owner of the funds claimed by it, and forthwith paid to the Reichsbank out of the funds the sum of $10,000, under the amendment to the Trading with the Enemy Act of March 4, 1923, 42 Stat. 1511 (50 USCA Appendix §§ 9, 20 and notes, 21, 22 note, 23 note, and 24).

In view of the litigation started by Robert J. Thompson, in November, 1928, the Alien Property Custodian refused to make further payment to the Reichsbank pending that litigation; whereupon the Reichsbank, on June 11, 1930, brought suit against the Alien Property Custodian and the Treasurer for the recovery of the funds which the Custodian had theretofore determined belonged to it. This suit was docketed as equity No. 51537. To this bill the Alien Property Custodian and Treasurer filed their answer. Shortly thereafter, the evidence relied upon by the Reichsbank was, by stipulation of the parties, filed therein.

Thompson, in July, 1930, filed a motion to dismiss without prejudice his original suit, and immediately instituted the present suit, docketed as equity No. 51612. In October, 1930 he filed an amended bill, to which the Alien Property Custodian and the Treasurer answered. Plaintiff, in his bill, claimed to be the owner of German mark bonds which he had purchased prior to the entry of the United States into the War, for the sum of $103,000 in gold, United States currency, which amount he sought to recover from the above funds, alleged in his bill to be the property of the German government and not the property of the Reichsbank.

The evidence stipulated in equity 51537 consisted of depositions which had been taken in a case in the United States District Court for the Southern District of New York, entitled "the Equitable Trust Company, New York, Complainant, v. Thomas W. Miller, as Alien Property Custodian of the United

States, Frank White, as Treasurer of the United States, and the Reichsbank, defendants." In these depositions it appeared that the Swiss government needed dollars with which to make payments in America. The Reichsbank, having dollar credits at its disposal with a Swedish bank, directed the Swedish bank to offer to the Swiss National Bank to sell dollars against Swiss francs. The Reichsbank intended by this transaction to dispose of the Swiss francs to German parties who were interested in making payments for importations into Germany from Switzerland, and possibly from other countries. The Swiss National Bank accepted the offer of the Swedish bank, and directed the Swedish bank to pay $5,000,000 in favor of the Swiss National Bank to the firm of Lee Higginson & Co., of New York. This payment was made by the Swedish bank, and debited against the Reichsbank. The Swiss National Bank, however, refused to make payment of the counter value in Swiss francs because the American government had suspended payment in the meantime, and consequently the Swedish bank could not credit the Reichsbank with the counter amount in Swiss francs. It was in this condition when the $5,000,000 were seized by the Alien Property Custodian in the hands of Lee Higginson & Co. The Reichsbank, according to the testimony, not having received repayment from the Swedish bank of the $5,000,000 charged by the Swedish bank against the Reichsbank, the money seized was the property of the Reichsbank, and for which it was liable. This evidence, confirmed by the depositions and letters transmitted relative to the matter, stands uncontradicted.

Later, on October 3, 1930, a further stipulation in equity 51537, Reichsbank v. Southerland et al. was entered into, admitting further documents accounting for the release of $2,200,000 by the Reichsbank to the German government for the purpose of paying obligations in this country incurred by the German government prior to the war. The evidence conclusively shows that this was in fact a loan by the Reichsbank to the German government to meet certain dollar obligations in this country, and that it was repaid to the Reichsbank by the German government in marks. This $2,200,000 was the matter in controversy and disposed of in the case of United States v. Securities Corporation General, and other cases, 4 F. (2d) 619, 55 App. D. C. 256; Id., 269 U. S. 283, 46 S. Ct. 116, 70 L. Ed. 275. The funds in controversy in those cases are not here involved and require no further consideration.

In October, 1930, Thompson filed a motion to consolidate the present case with equity 51537, and, on hearing, the court granted a limited order of consolidation, which restricted both cases to the evidence that had been stipulated by counsel in 51537, Reichsbank v. Southerland et al. Thompson agreed that the evidence so stipulated should constitute his evidence in this case.

The stipulation, among other things, provided as follows:

"1. That the evidence stipulated by counsel for the respective parties in the cause of Reichsbank v. Southerland et al., Equity No. 51537, be considered by the court as the evidence of the plaintiff in this cause.

"2. That said evidence, consisting of said stipulations and the exhibits attached thereto, is the only evidence which will be introduced in this cause with respect to the ownership of funds in the hands of the Alien Property Custodian and/or the Treasurer of the United States, out of which this plaintiff seeks to recover his alleged debt against the German Government."

The stipulation then reserved the right of the Alien Property Custodian, and the Treasurer to demand a fuller statement, if deemed wise, of the claim of plaintiff Thompson, and to object to any of the documentary evidence stipulated on the ground of its immateriality or irrelevancy.

On the same day the court entered an order of consolidation, in pursuance of the stipulation, confining the issue to the determination of whether or not the Reichsbank was the owner of the funds in question, and, further ordering that the determination of the court should be made upon the motion of the Reichsbank in 51537 for a decree on the pleadings, stipulation, and exhibits, attached thereto, and upon the amended bill, answer, and stipulation, in the Thompson case.

Pursuant to the order of consolidation, counsel for the Reichsbank, in 51537, moved the court for a decree upon the bill of complaint, answer, stipulation, and exhibits. Thereafter both cases were argued to the trial court. At the close of the argument, counsel for Thompson handed to the trial judge a pamphlet entitled "German Imperial Banking Laws," which occupies 225 pages of the printed record. This document was not offered in evidence, but was submitted merely for the information of the court. Shortly after the argument of the case, however, counsel for appellant filed a motion for leave to take further testimony, and submit therewith certain documents which were designated as

"newly discovered evidence." In answer to this motion, counsel for the Alien Property Custodian and Treasurer filed a reply to which was attached certain exhibits in contravention of appellant's motions and exhibits attached thereto.

Thereafter the court, upon due consideration, filed its conclusions of law and opinion in equity 51537, and on the same day filed its findings of fact, in which, among other things, the court found:

"3. Neither the Imperial Government of Germany nor the German Republic has ever been the owner of the said funds, above described, or any part thereof, and neither of said Governments has ever claimed any right, title, or interest in or to said funds."

"5. The Reichsbank was, prior to January 31, 1917, and has been at all times since, a private corporation, organized and existing under and by virtue of the laws of Germany, carrying on a general banking business. The shares of stock of said bank were, prior to January 31, 1917, and at all times since have been, owned by private persons.

"6. The Government of Germany has never been the owner of the Reichsbank or any part thereof, or of any of its funds, and has not, nor ever had, or claimed, any right, title, or interest in the funds held by the Alien Property Custodian, from which the plaintiff seeks to recover said alleged debt by this suit."

"8. In March 1917 the Reichsbank had on deposit with the Aktiebolaget Sveriges Privata Centralbank of Stockholm, Sweden, $5,-000,000, which amount the Swedish Bank in turn carried with the National City Bank of New York in its name but for the account and use of the Reichsbank.

"9. On March 23, 1917, the Reichsbank, being in need of Swiss francs for its customers, requested the Swedish Bank to offer to the Swiss National Bank of Berne, Switzerland, the $5,000,000 held by the Swedish Bank in the National City Bank of New York for Reichsbank, in exchange for Swiss francs to be paid by the Swiss National Bank to the Swedish Bank and held by it subject to the demand of the Reichsbank. The offer was made on March 30, 1917, and after some negotiations relative to the rate of exchange, was accepted and the Swedish Bank instructed the National City Bank of New York to pay the $5,000,000 to Lee, Higginson & Company, in favor of the Swiss National Bank on account of Confederation Swiss, and thereupon debited the Reichsbank with that amount. The transfer was duly made by the National City Bank to Lee Higginson & Company, and the Reichsbank in due course credited the Swedish Bank with a like amount."

"12. The Aktiebolaget Sveriges Privata Centralbank of Stockholm acted throughout the entire transaction herein referred to as the agent of the Reichsbank, and the Reichsbank was at all times the owner of the $5,-000,000 on deposit with the National City Bank to the credit of the said Swedish bank which was paid to Lee Higginson & Company, and remained the owner thereof, together with all accretions thereto, until the seizure of the same by the Alien Property Custodian, and has remained the sole and exclusive owner since that time, subject only to the rights acquired by the Custodian by reason of his seizure thereof."

"14. After the passage of the Trading with the Enemy Act, the Alien Property Custodian determined that certain moneys held by Kuhn, Loeb & Co., Speyer & Company, and J. & W. Seligman & Co. of New York, approximating the sum of $41,151.87, was the property of the Reichsbank Direktorium, an enemy, and thereupon seized the same as the property of said Reichsbank Direktorium and deposited the same in the Treasury of the United States to the credit of Trust No. 465, Reichsbank Direktorium. Thereafter, pursuant to the terms of the Trading with the Enemy Act, the Alien Property Custodian returned to Reichsbank $10,-000 of said funds. The remainder of said funds was transferred by the Alien Property Custodian to Trust No. 49,806 in the name of the Reichsbank, who was the owner of said funds at the time of the seizure thereof and is the owner at the present time, subject to the rights acquired by the Alien Property Custodian by reason of his seizure thereof.

"15. Neither the Imperial Government of Germany nor the German Republic has ever been the owner of the funds, above described in paragraph 14 of this finding of facts, or any part thereof, and neither of said Governments has ever claimed any right, title, or interest in said funds. The Imperial Government of Germany was not the owner of the credit balances with Kuhn, Loeb & Co., Speyer & Company and J. & W. Seligman & Co. of New York, which aggregated the sum of $41,151.87, described in paragraph 14 of this finding of facts, or any part thereof, at the time of the seizure of said credit balances by the Custodian."

In short, the court found that the Reichsbank is a private corporation, organized un-

der the laws of Germany, conducting a general banking business, that the German government was not the owner of any interest whatever in the Reichsbank, or of its funds, and that the funds here involved were the sole property of Reichsbank, a private corporation, and not the property of the German government.

In the decree the court ordered that, after deducting $200,000˙from the moneys held in trust No. 9322, 80 per centum of the principal be paid to the Reichsbank, and "that said $200,000 shall be retained by the Alien Property Custodian, and/or the Treasurer of the United States, until the case of Robert J. Thompson v. Howard Sutherland, as Alien Property Custodian, and Walter O. Woods, as Treasurer of the United States, et al., Equity No. 51612, Supreme Court of the District of Columbia, shall be finally determined by the courts." It further ordered that, should the Thompson case be decided against the plaintiff, or dismissed, 80 per centum of the $200,000 should be forthwith paid to the Reichsbank.

Considering the motion of counsel for plaintiff for leave to take further testimony, the court, in a memorandum filed June 8, 1931, among other things, stated as follows:

"I have carefully considered all of the evidence set forth in said amended motion, and the pamphlet submitted by Mr. Burke, for my consideration at the oral argument, and have made the findings of fact, signed June 8, 1931, and filed in the case of Reichsbank v. Southerland, Equity No. 51537. This conclusion is reached on the assumption that there was legally before me all of the evidence set forth in Thompson's amended motion for leave to take testimony. The Thompson case was submitted to me pursuant to a stipulation voluntarily entered into by the counsel for parties. I have no right to compel either side to modify that stipulation."

The court then suggested that one of two courses be pursued: Either that the testimony set forth in the amended motion should be considered as formally offered, in which event the court would "adopt the same findings of fact as have been made in the case of Reichsbank v. Southerland, Equity No. 51537"; or, if counsel were unwilling to so stipulate, the original order of consolidation would be rescinded, with the privilege of counsel proceeding in the case as they were advised; but in either event the court said "that the findings of fact above mentioned in

the Reichsbank case will stand, and appropriate decree will be signed in that case."

On July 2d following, counsel for Thompson filed its election to continue under the order of consolidation, consolidating suits 51537 and 51612, reserving his objections and exceptions, and further objection to the entry of a final decree without trial of the matters in issue other than the subject-matter of the order of consolidation.

On April 27, 1932, counsel for Thompson and counsel for the Alien Property Custodian and the Treasurer stipulated that the evidence attached to Thompson's motion to take further testimony and that the evidence attached to the reply to that motion should be considered as formally offered in the case. The material brought in by motion of the plaintiff consisted largely of documents and proceedings before a committee of Congress, reported in Senate document No. 62, entitled "Brewing and Liquor Interests and German and Bolshevik Propaganda." It was not in condition to have been accepted as proper evidence; but, under stipulation, this was permitted to be received and considered by the court. We have made a very careful review of these documents and find nothing therein which tends in the least to establish the ownership of these funds by the German government.

Nor do we find anything in the German law, incorporated in the record, to sustain such a conclusion. Unquestionably during the war the German government was transacting extensive business operations through the Reichsbank, just as this government was doing through its national and reserve banks, but the relation of the Reichsbank to the German government was not materially different from the relation of our Federal Reserve banks to the government of the United States. While the Reichsbank was a currency issuing agency of the German government, the German government possessed no title or ownership in any of its stock, property, or funds; and this is conclusively proven by the evidence originally stipulated into this record, consisting principally of depositions which had been taken in connection with the Equitable Trust Company case. In the taking of these depositions, the Alien Property Custodian and Treasurer were represented by able counsel from the Department of Justice.

Throughout this entire proceeding, to which the Reichsbank, though not formerly served with process, was made a party defendant and brought in by stipulation of consolidation as an active party defendant in

the case, has in most liberal manner permitted the case to proceed in many respects in absolute contravention of the rules of evidence. The court below was most liberal in permitting this matter to be brought into the case by stipulation of parties and in considering it as though it were competent evidence in the case. We have likewise considered carefully the entire record, including the copy of the German banking laws, and find nothing that would justify any criticism of the findings of fact or the conclusions of law reached by the learned trial justice.

The decree is affirmed, with costs.