## John Phillipi *v.* Asa D. Gove.

The seller is bound to explain himself clearly respecting the extent of his obligations ; and any obscure or ambiguous clause will be construed against him. C. C. 2449.
The exhibition of a sample on the sale of merchandize, is an indirect and tacit representation of the quality of the article ; and unless the warranty is clearly and explicitly excepted by the vendor, he must deliver the article in a condition equal to that of the sample.

Appeal from the Commercial Court of New Orleans, *Watts,* J.

*Gedge,* for the appellant.

*Grymes,* for the defendant.

Simon, J. The plaintiff sues to recover the amount of an account for three hundred kegs of grapes, and one hundred drums

of figs, sold to the defendant at public auction. Only forty-two kegs of grapes were delivered to the defendant, who refused to accept the balance, and resists the claim of the plaintiff, on the ground, that he is not liable for the value of the grapes, inasmuch as he was induced to purchase them through fraud and misrepresentation; the articles tendered to him being greatly inferior to those exhibited publicly, as samples of the whole lot.

There was judgment below in favor of the plaintiff, only for the price of the figs, and the value of the empty kegs received by the defendant; from which judgment, the plaintiff appealed.

The evidence shows that the articles in question were sold to the defendant, at public auction, on the levee, opposite the vessel in which they were; and that the principal part of the cargo remained on board the brig. At the time of the sale, there were ten or twelve kegs on the levee, and the auctioneer told the bystanders to open any of them to see what they were. The heads of one or two of the kegs were knocked in. They were opened promiscuously, and looked very well. Questions were addressed to the auctioneer by a bystander, inquiring whether the grapes were guarantied to be like the sample opened, to which he answered, no. This was said in French; and *in announcing the sale, the auctioneer did not announce that the grapes were not guarantied*. The ten or twelve kegs were landed *as samples to sell them*, the balance to be delivered from on board. When the auctioneer commenced the sale, he announced the terms of sale from a paper which he had in his hand, (this paper having been produced, shows only the terms of payment,) and after the keg was opened, he said: "Here is one keg promiscuously opened, and you see how it turns out." The defendant purchased three hundred kegs, at the rate of $2 per keg.

Several witnesses have been examined, some of whom were present at the sale; and they generally concur in saying, that in the purchase of grapes, it is expected that the cargo will turn out equal to the sample; or, in other words, that the bulk will be equal to the sample. One of them says, that having purchased twenty-five kegs, he opened ten of them, and found them nothing like the sample. The appearance of the sample exhibited to him,

Phillipi v. Gove.

induced him to purchase them. Another swears that the quality of the samples was very good, that he opened the keg spoken of by the other witnesses ; and $2 a keg was the fair market price for good grapes, at that time. Another testifies, that on examination of the forty kegs brought to defendant's store, they turned out to contain saw dust and grape stems ; and the last witness says, that he purchased a lot of grapes the same season, and only a part turned out equal to the sample ; the balance was returned to the seller, who took it back. He adds, that he never considered it a sale unless the bulk turned out equal, or nearly so, to the sample ; and that the exhibition of the sample, is a warranty that the balance is equal to it.

With this evidence before us, it is unnecessary to inquire into the question raised by the bill of exceptions contained in the record. The object of the testimony sought to be introduced, and which was rejected, was to show that the grapes in question were, at the time of the auction sale, announced by the auctioneer to be sold without any warranty. On referring to his evidence, we find that he states positively, that "in announcing the sale of the grapes, he did not announce that they were not guarantied." What was said by him in relation to the warranty, was only in answer to a question made to him by one of the bystanders ; and it has not been shown that, although the auctioneer's answer may have been heard by some of the persons present, the defendant, who, perhaps, did not understand the French language, heard and understood what was said between the witness and the auctioneer. From the view we have taken of the merits of this case, we do not think that the evidence offered and rejected, would, if admitted, change in any manner the final determination of the cause ; as, in our opinion, the right of the plaintiff to recover, depends mainly upon the circumstances disclosed by the evidence, in relation to the samples which were landed, and exhibited for the purpose, as the auctioneer says, of selling the grapes.

We concur with the judge, *a quo*, in the opinion, that this is a sale by sample, to the extent that *the bulk of the article should be generally as good as the sample exhibited.* Were it otherwise, it would enable the vendor to practice the most flagrant and gross frauds ; and the purchasers would easily be imposed upon, with

out the law affording them any protection, or any remedy against it. Now, what was, in this case, the real agreement or understanding of the parties ? On the one hand, good samples are exhibited, and are examined by the bystanders with the undoubted expectation that the bulk shall correspond with the sample ; and as one of the witnesses says, the appearance of the sample is what induces the persons present to buy. Instead of finding the article in the same condition, it turns out to be entirely bad, and only fit to be thrown away. On the other hand, it is pretended that the sale was made without warranty, and that, therefore, the plaintiff was, forsooth, fully authorized to deliver saw-dust and grape stems, in lieu of merchantable grapes according to the sample. The auctioneer did not say that he sold without warranty ; but to this it is answered, that he did not announce that the article should be warranted. He must have then exhibited the sample as a lure to the bystanders ; as the plaintiff pretends that this implies no warranty, and that the purchasers must necessarily have expected that the bulk would not resemble the sample. This seems to us unreasonable, and cannot be countenanced. It is a principle of law, that the seller is bound to explain himself clearly respecting the extent of his obligations, (Civil Code, art. 2449 ;) and that any obscure or ambiguous clause is to be construed against him. The exhibition of the sample implies a warranty that the article shall be in some measure in conformity to it ; and it was the duty of the plaintiff, through his agent, to have explained himself clearly as to the extent of the warranty. The grapes were sold at the fair market price for good grapes at that time ; and delivering to the purchaser saw dust and grape stems, amounts in our opinion, to a fraud sufficient to invalidate the contract. Civil Code, art. 1841. We consider, therefore, that the exhibition of the sample is an indirect and tacit representation of the quality of the merchandize, and that, except where the warranty is clearly and explicitly excepted by the vendor, he must deliver the article in a condition equal to that of the sample. We are not ready to say that, in any case, even in one in which warranty has been specially and clearly excepted, the vendor should ever be allowed to recover the price of objects by him sold in a state of

complete destruction or non-existence, for this would amount to a non-delivery, or be the result of a fraud.

Much has been said to show the usage of trade in relation to this particular article ; but we think the plaintiff has failed to establish it. The evidence on this point is contradictory, and we cannot believe that any commercial usage would ever authorize the plaintiff to sell and claim the price of merchandize which, having been destroyed at the time of the sale, and not existing, cannot be delivered,

*Judgment affirmed.*