(115 So. 915)

No. 28889.

JOHN BARKLEY & CO., Limited, v. J. M. BURGUIERES CO., Limited.

In re J. M. BURGUIERES CO., Limited.

Jan. 18, 1928. Rehearing Denied March 12, 1928.

*(Syllabus by Editorial Staff.)*

1. Sales ☞440(3)—Evidence of condition and appearance of sugar after delivery held admissible to show quality when delivered on cars.

In suit to recover difference between value of sugar purchased by sample and sugar actually delivered, evidence of condition of sugar after its delivery on board cars *held* admissible to show quality of sugar when delivered on board cars at factory.

2. Sales ☞271—In sales by samples, seller impliedly warrants bulk of article sold agrees in quality with sample.

In sales by samples, seller impliedly warrants that bulk of the article sold agrees in quality with the sample.

3. Sales ☞279—In sales by samples, nonconformity of bulk with sample must exist at time of delivery before buyer can recover damages.

In sales by samples, nonconformity of bulk of article with sample must exist at time of delivery before buyer can recover damages.

4. Sales ☞279—In sale of sugar by sample, buyer was not required to inspect sugar before delivery, but could inspect same after delivery and demand diminution in price where bulk did not agree with sample (Rev. Civ. Code, art. 2521).

In sale of sugar by sample, where delivery was effected by loading sugar on cars at factory which was 100 miles or more from where sale was made and from where buyer was domiciled, buyer was not required to inspect sugar before delivery, since Rev. Civ. Code, art. 2521, did not apply, but buyer could inspect article after delivery and demand diminution of price where bulk of sugar did not agree with sample, where he acted with reasonable promptness.

5. Sales ☞288(6)—Buyer could recover damages where bulk of sugar did not agree with sample, though he paid for sugar after delivery on cars.

Buyer was not precluded from recovering damages where bulk of sugar did not agree with sample, because he paid seller for sugar after it had been delivered on board cars.

O'Niell, C. J., dissenting.

Certiorari to Court of Appeals, Parish of Orleans.

Action by John Barkley & Co., Limited, against the J. M. Burguieres Company, Limited. Judgment rejecting plaintiff's demand was reversed by the Court of Appeal, which rendered judgment for plaintiff, and defendant applied for writ of review. Affirmed.

Borah, Himel, Bloch & Borah, of New Orleans, for applicant.

Ivy G. Kittredge, of New Orleans, for respondent.

OVERTON, J. Defendant is a corporation engaged in the planting and manufacture of sugar. In the summer of 1921 it placed upon the table of its broker, in the sugar exchange in New Orleans, a sample of its low-grade sugar. Plaintiff, a corporation engaged in the brokerage business, through John Barkley, one of its officers, examined the sample placed in the exchange by defendant and took an option on a quantity of sugar corresponding to it, amounting to two carloads, at 3¼ cents a pound. At the time this option was taken the greater part of the sugar had been manufactured, though a part had not. Plaintiff, immediately after taking the option, placed itself in communication with Armour & Co. of Chicago, to which company it had sold low-grade sugars for a good many years for mincemeat purposes. Armour & Co. agreed to accept the two carloads offered it by plaintiff at 3½ cents a pound, thus giving plaintiff a profit of a fourth of a cent a pound. Plaintiff then purchased at 3¼ cents a pound, from the sample exhibited, two carloads of sugar, the sugar to be delivered f. o. b. cars at Cypremort plantation, in the parish of St. Mary, the price to be paid within five days from the date of the bill of lading. Two or three days later

defendant notified plaintiff that the sugar was ready for shipment and without inspecting the sugar which was packed in ordinary sugar barrels plaintiff notified defendant to ship it care of Armour & Co. Mincemeat Department, Chicago. The sugar was shipped in two cars on July 30, or 31, 1921, and reached Chicago, one car on August 7, and the other on August 9, 1921, and were placed for unloading on the 8th and 9th of that month.

When the cars reached Chicago, they were opened without delay. It was found by Armour & Co. that considerable molasses was leaking from the barrels; that some of the sugar was virtually massecuite; that there was a considerable shortage; and that the sugar was not suited for mincemeat purposes. Armour & Co., therefore, notified plaintiff of what it found concerning the sugar, rejected the shipment, and asked plaintiff what disposition it desired made of it, and demanded of plaintiff the return of the purchase price it had paid.

When plaintiff received notice of the rejection of the shipment, it got into communication with defendant, and suggested to it that each send a representative to Chicago to examine the sugar, and made other suggestions to defendant looking to a settlement of the matter, but defendant refused to have anything further to do with it, insisting substantially that the sugar was up to the sample exhibited; that it had not sold the sugar, which, in fact, it had not, for any specific use; and was not concerned with the sale to Armour & Co., not having been a party to it. Plaintiff then attempted to dispose of the shipment to the best possible advantage, and finally sold it to Armour & Co. for 2½ cents a pound at shipping point, actual weight. The sugar was weighed by Armour & Co., and by the official weighmaster of the Chicago Board of Trade, and showed a shortage of 2,767 pounds, a difference due probably largely to leakage. This shortage, or the difference between the price for which plaintiff first sold the sugar and the price it later sold it for, amounts to $1,238.

A few days after the sugar was received by Armour & Co., samples of it, taken about five inches from the tops of the barrels, were put in sealed cans, and shipped to plaintiff. These were kept by plaintiff, including the sample exhibited, which was in a glass jar, in cold storage, and the samples were exhibited on the trial of this case, and, on appeal, before the Court of Appeal.

This suit is to recover the $1,238 mentioned above, which may be said to represent the difference between the value of the sugar that plaintiff purchased and the sugar actually delivered, the shortage, and the loss of profits, as disclosed by the first sale that plaintiff made when compared with the second. In the trial court judgment was rendered, rejecting plaintiff's demand. On appeal the Court of Appeal reversed the judgment of the lower court and rendered judgment for plaintiff for the amount sued for. The case is now before us on a writ of review, issued upon the application of defendant.

Defendant urges that the Court of Appeal erred in the judgment rendered by it in the following respects, as appears from the grounds stated in its brief, which are substantially in accord with those assigned in its application for a writ of review, to wit: (1) In holding that the sugar was not up to sample when delivered to plaintiff at the plantation; (2) in considering evidence of the condition of the sugar at a place other than Cypremort plantation, which was the place of delivery, and of its condition at a time other than the time of delivery; (3) in holding that in a sale by sample the purchaser is not required to inspect the goods so purchased, and therefore that article 2521 of the Revised Civil Code has no application; and (4) in holding that article 2521 of the Code does not apply where the goods are contained in boxes, barrels, or packages.

With reference to the first assignment, the Court of Appeal found, after an exhaustive review of the evidence, that the sugar delivered on board the cars at Cypremort plantation was appreciably inferior to that shown by the sample from which the purchase was made, and that the marked difference between that sample and the condition of the sugar when it reached Chicago, some ten days after it was shipped, could not be reasonably accounted for on the theory of deterioration from heat and other causes. In our view, these conclusions of fact reached by the Court of Appeal are fully supported by the evidence in the record. Certainly, the evidence would not justify us in disturbing those findings.

[1] As relates to the second assignment of error, defendant cites, in support thereof, Peterkin v. Oglesby, 30 La. Ann. 907; Hall, Kemp & Co. v. Plassan, 19 La. Ann. 11, and Lowe & Pattison v. Nelson, 7 La. Ann. 646. These decisions are authority for the proposition that the quality of the goods must be determined from their condition at the date and place of delivery, and not from their condition at some other place, where delivery was not to be made. However, these cases are not authority for the proposition that evidence of the quality or condition of the goods at the place where and at the time when received, or soon thereafter, is not admissible for the purpose of showing their condition at the time of sale or place of delivery, or that the goods were not of the quality contracted for. In our opinion, evidence of that nature, for the purpose stated, is admissible. It may show, or have a direct tendency to show, that the goods were not in the condition they should have been when delivered on board the cars, or that they were, when thus delivered, of a quality inferior to the goods purchased. It was only to determine the quality of the sugar delivered on board the cars at the factory that the court considered the evidence of its condition and appearance after it was deliver-

ed. The court was correct in so considering that evidence.

The third assignment is based on article 2521 of the Civil Code, which reads as follows:

"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."

The Court of Appeal held that, as the sale involved in this case was one by sample, the article quoted does not apply. The court based its reason for so holding primarily upon the ground that in a sale by sample the vendor impliedly warrants that the article sold will conform to the sample, and that the purchaser has the right to rely on this warranty, and not to inspect the goods prior to delivery, and cited in support of its ruling Barnard v. Kellogg, 77 U. S. (10 Wall.) 388, 19 L. Ed. 987.

[2-4] It does not admit of question that in sales by samples the vendor impliedly warrants that the bulk of the article sold agrees in quality with the sample. Phillipi v. Gove, 4 Rob. 315; Clarke v. Lockhart, 10 Rob. 5; Hall, Kemp & Co. v. Plassan, 19 La. Ann. 14; Benjamin on Sales (7th Ed.) § 648, p. 635. Nor does it admit of question that the nonconformity of the bulk with the sample must exist at the time of delivery. Hall, Kemp & Co. v. Plassan, supra. However, there seems to be no case in the jurisprudence of this state directly in point as to whether the purchaser must inspect the article sold at the time of or before delivery to ascertain whether there are any patent defects in it which render the bulk of the article not in accord with the sample, though in McNeil & Higgins Co. v. Martin, 160 La. 443, 107 So. 299, it is said that the inspection must be made in a reasonable time, and, unless so made, the purchaser will be concluded by his laches. While we find no case directly in point in this jurisdiction, still, in view of the warranty implied in sales by sample, and of the fact that sales are general-

ly made by sample because of the difficulty or impracticability of inspecting the bulk, and frequently where the bulk is at a distance from the purchaser, we think that such sales contemplate that the purchaser shall have the right to inspect the article after delivery, and to reject it or demand a diminution of the price, if the bulk of the article does not agree with the sample, though he must act with reasonable promptness. There possibly may be cases where inspection would be required prior to or at the time of delivery, but, if so, the present case is not one. Here, delivery was effected by loading the sugar on the cars at the factory, which was 100 miles or more from where the sale was made and the purchaser domiciled. In these circumstances it seems to us that it would be impracticable to hold that inspection should have been made prior to or at the time of delivery. We therefore conclude that there was no error in the refusal of the Court of Appeal to apply article 2521 of the Civil Code to this case.

The conclusion we have reached on the assignment, just considered, renders it unnecessary that we pass upon the fourth assignment relative to the applicability of article 2521 of the Civil Code, where the sugar or merchandise sold is packed in barrels.

[5] Plaintiff complains in its brief that the Court of Appeal erred in allowing the full amount of plaintiff's claim. However, we may say that we find no error in that respect. Nor did the court err in holding that plaintiff was not precluded from recovering, because he paid defendant for the sugar after it had been delivered on board the cars. The payment was made while the sugar was in transit, and upon the obvious supposition that it was in accord with the sample, a supposition which plaintiff, for the time being, had a right to rely on.

Before closing we may say that there is an exception of no cause of action in the record. This exception we have considered in passing on the merits. There is also in the record, offered by plaintiff, the rules of the sugar exchange pertaining to sales by sample. These rules add nothing to the case, since they are a virtual reproduction of the law as to the right of rejection when the article sold does not conform to the sample, and therefore were not mentioned in considering the case.

For the reasons assigned, the judgment under review is affirmed.

O'NIELL, C. J., dissents, and will hand down reasons.

O'NIELL, C. J. (dissenting). I have no doubt that the sugar that was shipped by the defendant to Chicago, on the plaintiff's order, was of the same quality as the sample that was exhibited at the sugar exchange in New Orleans. If it were not so, the defendant would be guilty of fraud. The plaintiff does not charge fraud, nor does the court find that the defendant was guilty of fraud. The so-called low-grade sugar that was sold in this instance was what is called second, or perhaps third, sugar. Such sugar is not fit or intended for human consumption, except after being rectified and used in the manufacture of some other article of food. The grading of such sugar is a matter of expert opinion. That is why the doctrine caveat emptor is particularly applicable to this case.

The condition of the sugar when it arrived in Chicago was not a safe criterion as to what its condition was when it was loaded on the cars at Cypremort, La., nine or ten days before. The sugar was en route during the hottest days of the year, from July 30th or 31st to August 7th and 9th. Second sugars will not stand such heat that long without melting to some extent. The shortage in weight was due to melting and the draining off of the molasses, and was not out of proportion to the quantity of sugar shipped.

McNeill & Higgins Co. v. Martin, 160 La. 443, 107 So. 299, was a suit for damages by

one who had bought from the manufacturer a quantity of *second sugar*, which, some time after the delivery, was found to be of a defective quality. In rejecting the demand, the court said:

"*Second* and *third* sugars are what their names indicate. The saccharine matter in the juice of the sugar cane will not all crystallize into sugar; that which will not thus crystallize becomes molasses, which is 'the uncrystallized syrup produced in the manufacture of sugar,' from which it is separated either by draining, or by centrifugal force. Vide Century Dictionary, verbo, *molasses;* verbo, *sugar,* 2.

"When the molasses is drained or expelled from the *first* run of 'raw' sugar, it takes with it in solution some of the sugar. When this is put through the sugar making process a second time, the proportion of molasses to sugar is of course much greater than in the first process; it is therefore more difficult to drain off or expell the molasses from these *second* sugars than from the *first*, and still more so as to third sugars, in consequence of which *second* sugars contain a much larger percentage of molasses than first sugars, and third sugars a still greater percentage.

"It is therefore not difficult to appreciate the correctness of the uncontradicted testimony in this record that *second* sugars, kept in barrels for several months in the summer time, would not at the end of that time hold true to samples taken at the time the sugar was put into the barrels."

The court held, point blank, quoting Rocchi v. Schwabacher, 33 La. Ann. 1364, as authority for the proposition, that it mattered not what the condition of the sugar was at the time and place of delivery, the plaintiff could not recover damages for the inferior quality or condition of the sugar, because of his neglect or waiver of his right—and his duty under article 2521 of the Civil Code—to inspect the sugar at the time and place agreed upon for delivery. The court said:

"Moreover, even if the sugar had been, when shipped, in the condition in which it was found to be when inspected by plaintiff, nevertheless plaintiff still could not recover, for—

" 'The buyer must use reasonable diligence to ascertain the facts. * * * An inspection, trial, or test, to determine whether the goods are of the quality specified, must be made with-in a reasonable time, and the buyer is guilty of laches, precluding rescission [or damages, Rocchi v. Schwabacher, 33 La. Ann. 1364], if he delays making such inspection or test for an unreasonable time.' 35 Cyc. 153.

"And accordingly—

" 'In the sale of goods by merchants, who were not the manufacturers thereof, where there has been no deceit practiced, and where the means of knowledge were at hand and equally available to both parties, and the subject of purchase was alike open to their inspection, if the purchaser did not avail himself of these means and opportunities, he will not be heard to say, in impeachment of the contract of sale [or in claiming damages], that he was deceived by the vendor's misrepresentations.' Rocchi v. Schwabacher, 33 La. Ann. 1364.

"A fortiori no such claim can be entertained under such circumstances, when it is not even claimed that the defendant misrepresented the article in any way whatever."

If the plaintiff, instead of ordering the sugar shipped to Chicago without inspection, had inspected it at the place agreed upon for delivery—as the plaintiff had the right to do, and as it was the plaintiff's duty to do—either the plaintiff would have accepted the sugar, as being in his opinion equal in quality to the sample, or the plaintiff would have refused to complete the sale, and the defendant would have had the sugar to sell to some one else. There is no justice in allowing the plaintiff to deprive the defendant of his sugar by ordering it shipped 1,045 miles away without inspection, and then refusing to pay for it merely because a buyer in Chicago deemed it unfit for making mincemeat.

The point which is overlooked in the majority opinion in this case is that, in a sale by sample, there is no sale, but only a promise of sale, until the bulk of the goods is inspected and accepted by the prospective buyer.

According to the precise language of the articles of the Civil Code, and according to the doctrine prevailing everywhere, the plaintiff in this case assumed the risk that the sugar might not grade as high as the sample, when he accepted it and ordered it shipped without

availing himself of the right to inspect and grade it at the time and place of delivery.

The decision in Hall, Kemp & Co. v. Plassan, 19 La. Ann. 11, referred to in the majority opinion, is directly in point, viz.:

"Where merchandise is sold by a sample, the extent of the warranty is limited to the condition of the article sold at the time of the sale. * * *

"Where the commodity is by its nature subject to change or· deterioration, and no fraud or concealment is shown, the buyer must show that the defect or deterioration existed at the date of the sale, or show that it was discovered as early as it was practicable to make an examination."

It is said in the majority opinion in this case that it would be impracticable to hold that an inspection of the sugar should have been made before or at the time agreed upon for delivery, because the place agreed upon for the delivery was 100 miles or further from New Orleans, where the agreement of sale was made and where the prospective buyer had his domicile. The distance is exactly 119 miles by rail, and the railroad almost parallels a model road, and a trackless transportation line. It would have cost less than $10, and less than that many hours, for a man in New Orleans to have gone either by rail or automobile and inspected the sugar when the defendant notified the plaintiff that it was ready for shipment. But what has that to do with the doctrine stated in article 2521 of the Civil Code, and recognized the world over? The article of the Code declares, and the universal doctrine is, that a sale of merchandise cannot be annulled for such defects as the buyer might have discovered by a simple inspection, and that, if the buyer takes the goods without availing himself of his right of inspection at the time and place of delivery agreed upon, he takes it at his risk. That is especially true when the buyer ships the goods to a distant market and thereby makes it difficult for the seller to prove the quality, and deprives him of his right to keep

the goods if an inspection proves unsatisfying to the buyer.

The Court of Appeal, in reversing the judgment of the civil district court, in this case, announced the doctrine that article 2521, requiring a buyer of merchandise either to avail himself of his right and opportunity of inspection or to take the goods at his risk, was not applicable to a sale by sample. The majority of the members of this court, as I understand the majority opinion, are not willing to accept that doctrine. There is no reason why it should be accepted, for there is no reason or authority for it; and the language of article 2521 of the Civil Code is particularly appropriate to sales by sample. The Court of Appeal cited as authority Barnard v. Kellogg, 77 U. S. (10 Wall.) 388, 19 L. Ed. 987, and Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393. Barnard v. Kellogg is authority only for the proposition that, in sales by sample, *where there is no opportunity for inspection,* the doctrine caveat emptor does not apply. In Barnard v. Kellogg, the sale of a quantity of wool in bales, of which the seller furnished samples, was held to be not a sale by sample, because the buyer was offered an opportunity to inspect the wool, and did not avail himself of it. The court said:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence·of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies. Such a rule, requiring the purchaser to take care of his own interests, has been found best adapted to the wants of trade in the business transactions of life. And there is no hardship in it, because if the purchaser distrusts his judgment he can require of the seller a warranty that the quality or condition of the goods he desires to buy corresponds with the sample exhibited. If he is satisfied without a warranty, and can inspect and declines to do it, he takes upon himself the risk that the article is merchantable. And he cannot relieve himself and charge the seller on

the ground that the examination will occupy time, and is attended with labor and inconvenience. If it is practicable, no matter how inconvenient, the rule applies. One of the main reasons why the rule does not apply in the case of a sale by sample, is because there is no opportunity for a personal examination of the bulk of the commodity which the sample is shown to represent. Of such universal acceptance is the doctrine of caveat emptor in this country, that the courts of all the States in the Union where the common law prevails, with one exception (South Carolina), sanction it."

Pope v. Allis is authority for the proposition only that, where goods are sold to be shipped to a distant place, the buyer's right to inspect the goods and to reject them if they are not of the quality represented may be exercised at the place agreed upon for delivery of the goods, and that he is not required to inspect them at the place where they are delivered to the common carrier. The court said:

"Where goods of a specified quality, not in existence or ascertained, are sold, and the seller undertakes to ship them to a distant buyer, and, when they are made or ascertained, delivers them to a carrier for the buyer, the latter, on their arrival, has the right, if they are not of the quality required by the contract, to reject them and rescind the sale, and, if he has paid for them, to recover back the price in a suit against the seller."

Accordingly, if the contract in this case had called for a delivery of the sugar in Chicago, instead of the delivery f. o. b. cars at the Cypremort plantation in the parish of St. Mary, the decree which the court has rendered would be correct. Maillard v. Nihoul, 21 La. Ann. 412.

"There is also in a sale by sample an implied condition that the buyer shall have a fair opportunity of comparing the bulk with the sample, and a refusal to allow this, will justify the buyer in rejecting the contract. Benj. Sales (Bennett Ed.) § 649." H. B. Claflin & Co. v. Mayer, 41 La. Ann. 1048, 7 So. 140.

The Supreme Court of the United States, through Mr. Justice Field, stated the doctrine plainly and emphatically in Slaughter v. Gerson, 80 U. S. (13 Wall.) 383, 20 L. Ed. 628, viz.:

"This misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by over-confidence in the statements of another. Volenti non fit injuria is the maxim in such cases in all courts. * * *

"The doctrine, substantially as we have stated it, is laid down in numerous adjudications. Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief.

"We have thus far assumed that the evidence in the case before us discloses false representations on the part of the vendor, but justice to him requires us to say that the evidence is insufficient to warrant this conclusion."

I cannot reconcile the decision rendered in this case with the provisions of the Civil Code on the subject, or the doctrine of caveat emptor, as applied by the other courts throughout the country, and as recognized by every law writer on the subject of sales.