(131 So. 185)

DUNBAR-DUKATE CO., Inc., v. MARTIN
FOUNTAIN & CO., Inc.
No. 29371.

Nov. 3, 1930.

Oliver S. Livaudais, of New Orleans, for appellant.

Dymond & Levy and George C. Schoenberger, Jr., all of New Orleans, for appellee.

ROGERS, J.

This is a suit in which plaintiff seeks the rescission of a contract for the sale of merchandise and the restitution of the purchase price and freight charges paid. The defense is a denial of any defects in the goods sold and a plea that plaintiff is estopped by its acceptance of the merchandise after inspection. There was judgment in the court below for plaintiff, and defendant has appealed.

■■ The parties litigant are Louisiana corporations engaged in the business of can-

ning and packing shrimp and oysters, owning plants at various points along the Gulf Coast in Louisiana and Mississippi. One of these points is the city of Biloxi, in the state of Mississippi, where both concerns operate large canning factories. In the early fall of the year 1926, plaintiff was in need of shrimp of a particular quality packed in cans of a certain size to supply its English trade. In this situation, plaintiff learned in some way that defendant had stored in its warehouse at Biloxi a quantity of shrimp which would probably answer its requirements. Accordingly, plaintiff approached defendant with a view of ascertaining whether its information was correct. Upon receiving an affirmative answer to its inquiry, plaintiff requested defendant to furnish samples of the shrimp, so that plaintiff would be able to determine whether the shrimp were of the quality as would satisfy its English customers. The defendant submitted samples of its shrimp, representing them to be fairly representative of the lot of shrimp stored in its warehouse. These samples were inspected at the offices of the plaintiff in Biloxi and New Orleans, and found to be of such quality that plaintiff was willing to label the shrimp with its well-known Dunbar-Dukate brand and ship them to England for the use of its customers residing there. Thereupon plaintiff purchased from defendant 425 cases of the shrimp, paying the sum of $1,897.63 therefor. This was on October 7, 1926. After the cans were lacquered by plaintiff and labeled by defendant, they were shipped in cases to New Orleans on a bill of lading issued to plaintiff at Biloxi. On their arrival in New Orleans, the goods were promptly placed on board the steamship West Cheswold, which carried them to England, where they arrived on November 19, 1926.

Latham & Co., of London, England, to whom the goods were consigned, promptly distributed them among its customers, who, as soon as they opened samples of their deliveries, found the shrimp to be of inferior quality and immediately rejected them. Latham & Co. then sampled the goods on its own account, and, finding the objections of their customers to be well founded, cabled plaintiff under date of November 22, 1926, notifying plaintiff of its customers' complaints and the condition of the goods, and requesting instructions. Plaintiff immediately replied directing that the goods be reshipped to New Orleans at the best possible rate. This was done, the shrimp arriving in New Orleans on December 31, 1926. Plaintiff, on the same day, examined a number of the cans, and found the shrimp to be mushy and of poor quality. They immediately wrote defendant, informing it of the circumstances, rejecting the shrimp, requesting shipping instructions, and demanding the return of the purchase price. Defendant ignored this letter as well as the subsequent letters in which plaintiff sought an adjustment of its claim. About the middle of the month of February, 1927, defendant finally requested that it be furnished with samples of the goods which had been returned. The request was promptly complied with, and defendant examined the goods, but remained silent as to the result of the examination. Plaintiff again wrote defendant under date of March 3, 1927, informing defendant that the matter had been placed in the hands of plaintiff's attorneys for suit. This letter, so far as the record shows, evoked no response from defendant, and the present suit was filed on July 21, 1927, plaintiff, demanding in addition to the restitution of the purchase price of $1,897.63, reimbursement in the sum of $176.65, which it had paid as freight charges.

The record satisfies us, as it did the judge of the court below, that the shrimp were sold to plaintiff according to samples of a particular high-grade article, equal to the standard of the shrimp sold to the trade under the well-known Dunbar-Dukate brand, and that the goods as delivered by defendant were not in conformity with the samples. The shrimp, due either to underprocessing or overprocessing, were soft, mushy, and discolored. They were merchantable, perhaps, to a limited extent—to the extent that possibly some price could have been obtained for them and some persons would have been willing to eat them and could have done so without serious injury to their health. But they were distinctly not of the nature and quality of the goods plaintiff bought and paid for.

The case falls within the rule that in sales by samples the seller impliedly warrants that the bulk of the article sold agrees in quality with the sample. Barkley & Co. v. Burguieres Co., 165 La. 723, 115 So. 915. Hence plaintiff was entitled, on returning the goods, to the restitution of the purchase price and the reimbursement of the amount paid for freight charges.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.